# UNITED STATES *v.* MASON.

## SAME *v.* SAME.

## SAME *v.* SAME.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR
THE DISTRICT OF MASSACHUSETTS.

Nos. 510, 511, 512.   Argued October 18, 19, 1910.—Decided November 28, 1910.

Clerks of the Federal courts are not controlled in respect to their fees and emoluments and accounting therefor by the provisions of the act of March 3, 1875, c. 144, 18 Stat. 479, or of Rev. Stat., §§ 5490 and 5497, relating to embezzlement of moneys and property of the United States by officers and other persons charged with the safe-keeping thereof.

There is a separate system with respect to the fees and emoluments of clerks, and the amounts which the clerk receives are not moneys or property of the United States but a fund from which he receives his compensation and expenses, and as to the surplus for which he must account to the United States he is not trustee but debtor.

THE facts, which involve the validity of indictments for embezzlement against a clerk of the District Court of the United States and the construction of statutes relating to the fees, salaries and accounts of clerks of United States courts, are stated in the opinion.

*Mr. Assistant Attorney-General Fowler* for the United States.

*Mr. Boyd B. Jones*, with whom *Mr. George L. Wilson* was on the brief, for defendant in error.

MR. JUSTICE HUGHES delivered the opinion of the court.

The defendant, the clerk of the District Court of the

United States for the District of Massachusetts, was indicted for the embezzlement of certain moneys of the United States. Separate indictments were found as to moneys received by the clerk in the years 1906, 1907 and 1908, respectively. They are precisely alike, save for the difference in the years and the amounts specified. In each case the Circuit Court sustained a demurrer as to three counts of the indictment, the second, third and fourth, and the judgments on the demurrers are brought here for review.

Each of these three counts—which are set forth in the margin [1]—states that the moneys were a "portion of a

---

[1] Second count. And the jurors aforesaid, on their oath aforesaid, do further present, that said Frank H. Mason during all of the year nineteen hundred and eight was, and ever since has been, an officer of the United States, to wit, clerk of the District Court of the United States for the District of Massachusetts, and on said first day of February, in the year nineteen hundred and nine, had in his possession and under his control, to wit, at Boston aforesaid, certain public moneys of the United States, a particular description whereof is to said grand jurors unknown, to wit, moneys to the amount and of the value of three hundred and eighty-seven dollars, which during said year nineteen hundred and eight had come into his possession and under his control in the execution of his office as such officer, and under authority and claim of authority as such officer, and were a portion of a surplus of fees and emoluments of his said office over and above the compensation and allowances authorized by law to be retained by him for said year nineteen hundred and eight, which said public moneys said Frank H. Mason, on said first day of February, in the year nineteen hundred and nine, as such officer, was charged, by certain acts of Congress, to wit, §§ 823, 828, and 844 of the Revised Statutes of the United States, and the act approved June 28, 1902, 32 Statutes at Large, chapter 1301, and by divers other acts of Congress, safely to keep; that said Frank H. Mason, on said first day of February, in the year nineteen hundred and nine, at Boston aforesaid, the same public moneys unlawfully did fail safely to keep as required by said acts of Congress, and, on the contrary, the same then and there unlawfully did convert to his own use; and that thereby said Frank H. Mason then and there was guilty of embezzlement of said public moneys so converted.

surplus of fees and emoluments of his said office over and· above the compensation and allowances authorized by law to be retained by him." The charge of the second count is that the defendant "the same public moneys

Third count. And the jurors aforesaid, on their oath aforesaid, do further present, that said Frank H. Mason, during all of the year nineteen hundred and eight was, and ever since has been, an officer of the United States, to wit, clerk of the District Court of the United States for the District of Massachusetts, and on said first day of February, in the year nineteen hundred and nine, had in his possession and under his control, to wit, at Boston aforesaid, certain public moneys of the United States, a particular description whereof is to said grand jurors unknown, to wit, moneys to the amount and of the value of three hundred and eighty-seven dollars, which during said year nineteen hundred and eight had come into his possession and under his control in the execution of his office as such officer, and under authority and claim of authority as such officer, and were a portion of a surplus of fees and emoluments of his said office over and above the compensation and allowances authorized by law to be retained by him for said year nineteen hundred and eight, which said public moneys said Frank H. Mason, on said first day of February, in the year nineteen hundred and nine, as such officer, was charged, by certain acts of Congress, to wit, §§ 823, 828, and 844 of the Revised Statutes of the United States, and the act approved June 28, 1902, 32 Statutes at Large, chapter 1301, and by divers other acts of Congress, safely to keep; that said Frank H. Mason, on said first day of February, in the year nineteen hundred and nine, at Boston aforesaid, the last-mentioned public moneys unlawfully did fail safely to keep as required by said acts of Congress, and, on the contrary, the same then and there unlawfully and fraudulently did convert to his own use; and that thereby said Frank H. Mason then and there was guilty of embezzlement of said public moneys so converted.

Fourth count. And the jurors aforesaid, on their oath aforesaid, do further present, that said Frank H. Mason during all of the·year nineteen hundred and eight was, and ever since then has been, an officer of the United States, to wit, clerk of the District Court of the United States for the District of Massachusetts, and, on said first day of February, in the year nineteen hundred and nine, had in his possession and under his control, to wit, at Boston aforesaid, a portion of the money of the United States, a particular description whereof is to said grand jurors unknown, to wit, money to the amount and of the

unlawfully did fail safely to keep" as required by acts of Congress, "and, on the contrary, the same then and there unlawfully did convert to his own use," and thereby "was guilty of embezzlement of said public moneys so converted." The third count is the same as the second, except that it charges that the defendant converted the moneys "fraudulently" as well as "unlawfully." The fourth count charges that he should have paid the money, that is, the alleged surplus, to the United States "in the manner provided by law," and that he "the same money unlawfully, wrongfully, and fraudulently did convert to his own personal use and embezzle."

To sustain the counts, the assignment of errors refers to §§ 5490 and 5497 of the Revised Statutes, and to the act of March 3, 1875, chapter 144 (18 Stat., p. 479).

Section 5490 is as follows:

"Every officer or other person charged by any act of Congress with the safe-keeping of the public moneys, who fails to safely keep the same, without loaning, using, converting to his own use, depositing in banks, or exchanging for other funds than as specially allowed by law, shall be guilty of embezzlement of the money so loaned, used, converted, deposited, or exchanged; and shall be impris-

---

value of three hundred and eighty-seven dollars, which during said year nineteen hundred and eight, had come into his possession and under his control in the execution of his office as such officer, and under authority and claim of authority as such officer, and was a portion of a surplus of fees and emoluments of his said office over and above the compensation and allowances authorized by law to be retained by him for said year nineteen hundred and eight, which money last aforesaid he should, on said first day of February, in the year nineteen hundred and nine, have paid to the United States at Boston aforesaid in the manner provided by law; and that said Frank H. Mason, on said first day of February, in the year nineteen hundred and nine, at Boston aforesaid, the same money unlawfully, wrongfully, and fraudulently did convert to his own personal use and embezzle.

oned not less than six months nor more than ten years, and fined in a sum equal to the amount of money so embezzled."

Section 5497, with the addition made by the amendment of February 3, 1879, chapter 42 (20 Stat. 280), provides:

"Every banker, broker, or other person not an authorized depositary of public moneys, . . . who uses, transfers, converts, appropriates, or applies any portion of the public money for any purpose not prescribed by law, . . . is guilty of an act of embezzlement of the public money so deposited, loaned, transferred, used, converted, appropriated, or applied, and shall be punished as prescribed in section fifty-four hundred and eighty-eight.

"And any officer connected with, or employed in, the internal-revenue service of the United States, and any assistant of such officer, who shall embezzle or wrongfully convert to his own use any money or other property of the United States, and any officer of the United States, or any assistant of such officer, who shall embezzle or wrongfully convert to his own use any money or property which may have come into his possession or under his control in the execution of such office or employment, or under color or claim of authority as such officer or assistant, whether the same shall be the money or property of the United States or of some other person or party, shall, where the offense is not otherwise punishable by some statute of the United States, be punished by a fine equal to the value of the money and property thus embezzled or converted, or by imprisonment not less than three months nor more than ten years, or by both such fine and imprisonment."

By the act of March 3, 1875, chapter 144, § 1 (18 Stat., p. 479), "any person who shall embezzle, steal, or purloin any money, property, record, voucher, or valuable

thing whatever, of the moneys, goods, chattels, records, or property of the United States, shall be deemed guilty of felony."

It is also contended, in argument, that the facts alleged in the indictment bring it within the scope of § 5489 of the Revised Statutes, which provides that if "any public depositary fails safely to keep all moneys deposited" he shall be deemed guilty of embezzlement; and this, under § 5493, is to be construed "to apply to all persons charged with the safe-keeping, transfer, or disbursement of the public money, whether such persons be indicted as receivers or depositaries of the same."

What, if any, application these provisions may have to the clerk of the District Court, with respect to the fees and emoluments of his office, can be determined only after a consideration of the history of his relation to these moneys and of the statutes which specifically define his rights and duties. Prior to 1841 the clerks were not required to render any account of their fees to the Government. *United States* v. *Hill,* 120 U. S. 169, at page 176. The act of March 3, 1791, chapter 22, § 1 (1 Stat. 217), fixed their compensation for attending court and made an allowance for traveling. That of May 8, 1792, chapter 36, § 3 (1 Stat. 277), added such fees as were allowed by the Supreme Court of the State, and authorized the court to grant a reasonable compensation for the discharge of duties not performed by the clerks of the state court and for which the laws of the State made no allowance. But, under these statutes, the fees and emoluments received by the clerks were their own property. And they were to be recovered "in like manner as the fees of the officers of the States respectively for like services." 1 Stat. 278, § 6.

In 1841, for the first time, the clerks were limited as to the amount which they were entitled to retain out of their fees. The act of March 3, 1841, chapter 35, § 1

(5 Stat. 427), provided that the fees and emoluments retained by the clerks after the payment "of such necessary office and other expenses as shall be allowed by the Secretary of the Treasury," within a prescribed limit, should "not exceed, in any case, four thousand five hundred dollars; the overplus of fees and emoluments to be paid into the public Treasury, under such rules and regulations as may be prescribed by the Secretary of the Treasury, subject to the disposition of Congress." This was followed by the act of May 18, 1842, chapter 29 (5 Stat. 483), which limited the amount which the clerk could retain out of the fees and emoluments of his office "for his own personal compensation, over and above the necessary expenses of his office, and necessary clerk hire included, also to be audited and allowed by the proper accounting officers of the Treasury," to the sum of thirty-five hundred dollars per year. The clerks were required to make verified returns semi-annually, "embracing all the fees and emoluments of their respective offices, of every name and character," and also "all the necessary office expenses of such officer, together with the vouchers for the payment of the same." It was also provided that the officer, with each return, should "pay into the Treasury of the United States, or deposit to the credit of the Treasurer thereof, as he may be directed by the Secretary of the Treasury, any surplus of the fees and emoluments of his office, which his half-yearly return so made as aforesaid shall show to exist over and above the compensation and allowances hereinbefore authorized to be retained and paid by him." Where the return showed that a surplus might exist the Secretary of the Treasury was to cause the return to be carefully examined and the accounts of disbursements to be regularly audited "and an account to be opened with such officer in proper books to be provided for the purpose."

The plain object of this statute was to limit the amount

which the clerk was to retain and to require an account-
ing, an audit of expenses, and a payment of the surplus.
Otherwise the established method of administering the
office was not changed.  The fees were to be recovered
as theretofore; and to the extent of the amount of the
fixed compensation of the clerk and the necessary ex-
penses of his office, he was entitled to use and to pay as
formerly.  The statute suggests no other course.  What,
if anything, should be paid into the public treasury at
the end of the half year, when he was to make his return,
depended upon the amount of the fees, the amount of
the expenses and the result of the audit.  If his fixed
compensation and his necessary expenses exhausted the
fees there would be nothing to pay.  The amount pay-
able was to be determined when the return was made.

This was the state of the law as to the clerks' fees and
emoluments at the time of the passage of the act of Au-
gust 6, 1846, chapter 90 (9 Stat. 59), which was entitled
"An Act to provide for the better Organization of the
Treasury and for the Collection, Safe-Keeping, Transfer
and Disbursement of the public Revenue."  It made
careful provision with respect to the duties of the Treas-
urer, Assistant Treasurers, and of collectors and receivers
of public moneys, and the manner in which these moneys
should be deposited and disbursed.  By § 6 of this act
"all public officers of whatsoever character" were re-
quired "to keep safely, without loaning, using, deposit-
ing in banks, or exchanging for other funds than as al-
lowed by this act, all the public money collected by them,"
until it was ordered "by the proper department or officer
of the Government" to be transferred or paid out.  See
Revised Statutes, § 3639.  By § 16 it was provided that
if any officer "charged by this act, or any other act,
with the safe-keeping, transfer, and disbursement of the
public moneys" should use, loan, deposit or exchange,
except as allowed by the act, "any portion of the public

moneys entrusted to him" every such act should be deemed an embezzlement.    9 Stat. 63.

This last-mentioned section is the source of § 5490 of the Revised Statutes, which we have quoted above as one of the statutes relied upon to sustain the counts in question, and in construing it we may refer to the purpose and scope of the act from which it was derived. *McDonald* v. *Hovey,* 110 U. S. 619; *United States* v. *Le Bris,* 121 U. S. 278; *Logan* v. *United States,* 144 U. S. 263, 302.    Section 5493 must be construed in the same way for a similar reason.    And it is clear that the Treasury act of 1846, and the provisions of § 16, did not apply to the fees and emoluments received by clerks of courts, and that the clerks were not charged, within the meaning of that act, with the safe-keeping of these fees and emoluments as public moneys.    These were governed by other rules.    They lay outside of the prohibition of § 16 against loaning, using, converting to his own use, depositing in banks, and exchanging for other funds, for it was upon these fees that the clerk depended for his livelihood and for the payment of the expenses of his office, subject only to the duty twice a year to make his accounting and to pay over the surplus if the fees exceeded the total amount allowed him.

The statute relating to the Treasury was speedily supplemented by the act of March 3, 1849, chapter 110, entitled "An Act requiring all Moneys receivable from Customs and from all other Sources to be paid immediately into the Treasury, without Abatement or Reduction, and for other Purposes" (9 Stat. 398).    This is the source of § 3617 of the Revised Statutes, providing that "the gross amount of all moneys received from whatever source for the use of the United States," with the exceptions stated, (not here important,) "shall be paid by the officer or agent receiving the same into the Treasury, at as early a day as practicable, without any abatement or

deduction on account of salary, fees, costs, charges, expenses, or claim of any description whatever." But this, obviously, had no application to clerks of courts who continued to receive, hold and use their fees and emoluments subject to the prescribed limitations and the duty to account.

In 1849 the supervisory power of the Secretary of the Treasury over the accounts of clerks was transferred to the Secretary of the Interior (Act of March 3, 1849, chapter 108, § 4, 9 Stat. 395). In 1853, a statute was passed regulating the fees of clerks and other officers of the courts throughout the United States, and the duties of clerks with respect to their returns and payments were defined. This established the present fee bill (Act of February 26, 1853, chapter 80, 10 Stat. 161). In 1870 the supervisory power passed to the Attorney-General. Act of June 22, 1870, chapter 150, § 15, 16 Stat. 164.

The provisions of the act of 1853, as modified by the subsequent legislation, have been incorporated in the Revised Statutes, §§ 823 to 857, and these continue the policy of the act of 1842, *supra*.

Section 823 provides that "the following and no other compensation shall be taxed and allowed to . . . clerks of the circuit and district courts." Section 828 prescribes the clerks' fees. Section 833 provides for semi-annual returns to the Attorney-General, as follows:

"Every district attorney, clerk of a district court, clerk of a circuit court, and marshal, shall, on the first days of January and July, in each year, or within thirty days thereafter, make to the Attorney-General in such form as he may prescribe, a written return for the half year ending on said days, respectively, of all the fees and emoluments of his office, of every name and character, and of all the necessary expenses of his office, including necessary clerk-hire, together with the vouchers for the payment of the same for such last half year. He shall

state separately in such returns the fees and emoluments received or payable under the bankrupt act; . . . Said returns shall be verified by the oath of the officer making them."

Section 839 defines the amount which may be retained out of the clerk's fees for his compensation over and above expenses:

"No clerk of a district court, or clerk of a circuit court, shall be allowed by the Attorney-General, except as provided in the next section, and in section eight hundred and forty-two to retain of the fees and emoluments of his office, or, in case both of the said clerkships are held by the same person, of the fees and emoluments of the said offices, respectively, for his personal compensation, over and above his necessary office expenses, including necessary clerk-hire, to be audited and allowed by the proper accounting officers of the Treasury, a sum exceeding three thousand five hundred dollars a year for any such district clerk, or for any such circuit clerk, or exceeding that rate for any time less than a year."

Sections 844, 845 and 846 contain the following provisions, which are applicable to the payment by clerks of the surplus shown by their returns and for the examination and audit of their accounts:

"SEC. 844. Every district attorney, clerk, and marshal shall, at the time of making his half-yearly return to the Attorney-General, pay into the Treasury, or deposit to the credit of the Treasurer, as he may be directed by the Attorney-General, any surplus of the fees and emoluments of his office, which said return shows to exist over and above the compensation and allowances authorized by law to be retained by him.

"SEC. 845. In every case where the return of a district attorney, clerk, or marshal shows that a surplus may exist, the Attorney-General shall cause such returns to be carefully examined, and the accounts of disbursements

to be regularly audited by the proper officer of his Department, and an account to be opened with such officer in proper books to be provided for that purpose.

"Sec. 846. The accounts of district attorneys, clerks, marshals, and commissioners of circuit courts shall be examined and certified by the district judge of the district for which they are appointed, before they are presented to the accounting officers of the Treasury Department for settlement. They shall then be subject to revision upon their merits by said accounting officers, as in case of other public accounts."

Section 857 brings forward the provision of the act of May 8, 1792, c. 36 (1 Stat. 278), as to the manner in which the fees shall be recovered.

Section 5 of the act of February 22, 1875, chapter 95 (18 Stat. 334), provides that if any clerk of any District or Circuit Court of the United States shall willfully refuse or neglect to make or to forward any report, certificate, statement, or other document required by law to be made or forwarded by him, it shall be the duty of the President to remove him from office, and he shall not be eligible to any appointment as clerk or deputy clerk for the period of two years thereafter. By § 6 of the same act, the willful refusal or neglect to make or to forward the report, or other documents mentioned in the preceding section, is made a misdemeanor.

We have also to note the proviso contained in the appropriation act of June 28, 1902, chapter 1301 (32 Stat. 475, 476), as follows:

"That each clerk of the district and circuit courts shall, on the first days of January and July of each year, or within thirty days thereafter, make to the Attorney-General, in such form as he may prescribe, written returns for the half year ending on said days, respectively, of all fees and emoluments of his office of every name and character, and of all necessary expenses of his office, in-

cluding necessary clerk hire, together with the vouchers for the payment of the same for such last half year; and the word 'emoluments' shall be understood as including all amounts received in connection with the admission of attorneys to practice in the court, all amounts received for services in naturalization proceedings, whether rendered as clerk, as commissioner, or in any other capacity, and all other amounts received for services in any way connected with the clerk's office."

There has thus been established a distinct system with respect to the fees and emoluments of the clerks. Its features are to be explained by the history of the clerk's office and the requirements of its convenient administration. It is urged that the fees and emoluments are attached to the office, and are received in an official capacity. This consideration, however, does not aid the prosecution, for they were attached to the office before the statute of 1841, when they belonged to the clerk without any duty on his part to account for any portion of them. The fees and emoluments stand in a different category from other moneys which he may receive by virtue of his office, as, for example, moneys paid into court. Revised Statutes, §§ 995, 996.

In *United States* v. *Hill*, 123 U. S. 681, the action was on the official bond of the clerk of the District Court of the United States for the District of Massachusetts, and it was asserted that this court had jurisdiction to review the judgment because the suit was brought for the enforcement of a "revenue law." The court held that § 844 of the Revised Statutes requiring the clerk to pay into the Treasury any surplus of fees and emoluments shown by his return was not a revenue law within the meaning of § 699, and in delivering the opinion of the court Chief Justice Waite said:

"Certainly it will not be claimed that the clerk of a District Court of the United States is an 'officer of the

revenue,' but there is nothing to indicate that the term
revenue has any different signification in this subdivision
of the section from that which it has in the other. The
clerk of a court of the United States collects his taxable.
'compensation,' not as the revenue of the United States, .
but as the fees and emoluments of his office, with an ob-
ligation on his part to account to the United States for
all he gets over a certain sum which is fixed by law. This
obligation does not grow out of any 'revenue law,' prop-
erly so called, but out of a statute governing an officer
of a court of the United States."

None of the statutes relating to embezzlement of moneys
or property of the United States, which we have quoted,
affords a basis for the counts in question. There may be an
honest difference of opinion with regard to the amount, the
payment of which, from the fees collected, may properly
be allowed. Provision has been made for the examination.
of the matter and for the ascertainment of the amount
due. Pending such audit there would be no justification
for indicting the clerk as an embezzler upon the allega-
tion that he had in his hands a surplus which he had
converted to his own use. It is not a question of public
moneys which are to be deposited as such and are to be
disbursed in accordance with the Treasury system. A
fixed compensation is to be retained, the expenses of the
office are to be defrayed and the question of the necessity
of the expenses is to be passed upon; and the clerk is not
in default until he refuses or fails to make his return or
to pay over the surplus shown by his return to exist or
the amount found upon the audit of his accounts to be
payable.

We have not before us a case where a clerk has refused
or failed to make the return required by statute or to pay
over the surplus shown by his return to exist or established
by the audit. None of the three counts makes that charge.
The second and third counts charge that the moneys in

question constituted a portion of the surplus over and above his authorized allowances, and that he converted the moneys to his own use. Whether or not this surplus was shown by his return, or was the result of the audit contemplated by the statute, is not stated. The fourth count alleges that the clerk should have paid to the United States the moneys which it is said were a part of the surplus; but it is not alleged that the duty had arisen upon the return and accounting required by the statute.

But, for the reasons we have stated, even the duty to pay the surplus shown by the return or audit is not governed by the statutes, relating to embezzlement, which have been referred to in support of these counts. The amount with which the clerk is chargeable upon his accounting is not the "public money" or "the money or property of the United States" within the meaning of their provisions. The fees and emoluments are not received by the clerk as moneys or property belonging to the United States, but as the amount allowed to him for his compensation and office expenses under the statutes defining his rights and duties, and with respect to the amount payable when the return is made the clerk is not trustee but debtor. Any other view must ignore not only the practical construction which the statutes governing the office have received, but their clear intent.

The second, third and fourth counts of the indictment are insufficient, and the judgment of the Circuit Court is therefore in each case

*Affirmed.*