UNITED STATES v. MacMILLAN et al. (four cases). SAME v. HOLLOWAY et al. (three cases). SAME v. SAMPSELL et al. (two cases).

(District Court, N. D. Illinois, E. D. November 18, 1913.)

### Nos. 10,622–10,630.

1. CLERKS OF COURTS (§ 70*)—CLERK OF FEDERAL COURT—LIABILITY FOR INTEREST ON DEPOSITS.

A fund constituted from deposits made with the clerk of a federal court by litigants, pursuant to a rule of court, to be drawn against by the clerk for the payment of the fees of himself and other officers of the court as they accrue, so long as such fund remains as a security deposit is not public money of the United States, but the property of the litigant, and the United States has no claim to interest paid thereon.

[Ed. Note.—For other cases, see Clerks of Courts, Cent. Dig. §§ 109–118; Dec. Dig. § 70.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. CLERKS OF COURTS (§ 70*)—CLERKS OF FEDERAL COURTS—LIABILITY FOR INTEREST ON DEPOSITS.

Money collected by the clerk of a federal court for official services rendered is not so collected as revenue of the United States, but as fees and emoluments of his office, and belongs to him, subject only to his duty to render an account of the same semiannually and to pay into the treasury any excess above the amount he is allowed by statute to retain; and the United States has no right or title to any interest he may receive on the fund pending his semiannual return, either as an increment of the fund or as an emolument of the office, and as such to be accounted for.

[Ed. Note.—For other cases, see Clerks of Courts, Cent. Dig. §§ 109–118; Dec. Dig. § 70.*]

3. WORDS AND PHRASES—"EMOLUMENT" OF OFFICE.

An "emolument" of an office is a sum received by the officer for the performance of some act or service pursuant to the obligation or sanction of his office and for which he has the right by virtue of his office to exact the payment.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 3, pp. 2367, 2368.]

At Law. Actions by the United States, four against Thomas C. MacMillan and others, three against Edward M. Holloway and others, and two against Marshall E. Sampsell and others. On demurrers to pleas in each case. Demurrers overruled.

These nine actions in the form of debt, four of them against the present, two against a former, clerk of this court, three against the clerk of the Circuit Court of Appeals, and each of their respective bondsmen, are brought by the government upon alleged breaches of official bonds. The declarations aver such breaches to consist of failures to account and pay over to the United States specified sums of money "derived from payments made to the respective clerks," for and on account of interest on public moneys intrusted to "said clerks in their respective official capacities as clerks," to wit:

(a) Moneys paid to the clerk as his fees under the bankruptcy laws of the United States, and

(b) Moneys paid to the clerk as his fees, and compensation as his emoluments as clerk under the various statutes of the United States, and

(c) Moneys deposited with the clerk by various litigants in said District Court under and by virtue of certain rules of said court, and

The aggregate sum of interest moneys, default in whose payment to the government is so averred, is further characterized as having been "paid to him (the clerk) for the use of the said moneys collected and held by him as clerk as aforesaid under the laws of the United States," etc., and "the same is and was no part of any sum or sums earned by him * * * (the clerk) as such clerk, but was in fact and is the property of the United States."

To the several declarations pleas were interposed, each setting up, in brief:

That there came into the possession and custody of the defendant clerk, and was deposited by him in various banks while he was in such custody and possession, certain moneys, referred to as the aggregate principal, composed of, and coming from various sources, viz.:

"(a) Moneys paid to the clerk as clerk's fees and compensation, under the bankruptcy laws of the United States; and

"(b) Moneys paid to the clerk as his fees, and compensation, and as his emoluments as clerk, under various other statutes of the United States; and

"(c) Moneys deposited with the clerk by various litigants in said District Court, under and by virtue of certain rules of said court, hereinafter referred to.

"That on the average balances of said 'aggregate principal' so remaining from day to day on deposit, the clerk received interest at the rate of two

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

(2) per cent., said interest so received being the said * * * (sum) mentioned in the declaration, and no other.

"That as to the money included in items 'a' and 'b' and in that portion of item 'c' which was, after its deposit, paid to the clerk as clerk's fees,·emoluments, or compensation as hereinafter mentioned (and which portion is hereinafter for convenience referred to as fund 'd'), the clerk did on the first day of each January and July of each year, or within thirty days thereafter, during all the time mentioned in the declaration, and in all respects as provided by statute, make a written return to the Attorney General of the United States, on a form prescribed by the latter, for and covering the next preceding semiannual period, of all the fees and emoluments of his said office as clerk of said District Court, and included in the same all of the moneys composing said items 'a' and 'b' and that portion of item 'c' paid to the clerk as fund 'd.'

"That each of said returns included also a statement of the necessary expenses of said office during the same respective semiannual period, including necessary clerk hire (and including his own compensation as allowed by law), and was accompanied by vouchers, for, and showing the payment of, the same. That each said return particularly stated the amounts for the respective preceding half year, of all fees and emoluments received, and of all of said necessary expenses paid out, which expenses were deducted on said statement from the entire amount of all said fees and emoluments received. That the surplus money then remaining, and thus shown, was in each said half year period, and immediately after said return was made, to wit, on the same day, paid into the Treasury of the United States, or to the Subtreasurer of the United States, as was then directed by the Attorney General, and said surplus thus shown and accounted for and paid, was in each case received by the United States.

"And the said interest received by the clerk in each said semiannual period earned and accrued as aforesaid upon said items 'a' and 'b', and upon that portion of item 'c' above mentioned as fund 'd' was so earned and accrued before, and not after, the said fees and emoluments composing the said items had been so included in, and made the subject of said return, and had formed the basis of the computation and ascertainment of said surplus."

The pleas (of the defendants, clerks of the District Court) further set out the court rules, which provide for the deposit by plaintiffs with the clerk, of the sum of $25, to be applied to the payment of accruing costs; for the deposit by defendants appearing separately, of the sum of $5 for the payment of defendant's costs that may accrue; for the receipt by the clerk of moneys paid to be applied on judgments, subject to the clerk's right to take one per cent. thereof as earnings of the office; for the accounting of interest on such latter sums upon motion of a party, no such interest to be accounted for without the order of the court; for the repayment to original depositors of unexpended balances remaining in the clerk's hands after expiration of a specified time. The pleas proceed:

"That said item 'c' was composed entirely of money paid to the clerk by litigants in said court, under and by virtue of. said court rules above mentioned, and for the purpose of being disbursed by the clerk.

"To himself as fees or compensation allowed by law; and to the marshal and other court officers as their respective fees or compensation allowed by law; and to other persons, and for other purposes, connected with litigation, as the same should be from time to time by said court directed.

"That all of the fees and emoluments, earned by the clerk, and to which he became entitled, to be paid and which he was paid out of said item 'c,' were by him included in and specified in his said respective semiannual returns and reports as aforesaid.

"That that portion of the money composing said item 'c' which was composed of said fees and compensation of the marshal, and other court officers, and said sums directed by the court to be paid to others, was all, by the clerk, paid to those court officers entitled to the same, as, and when the same was by such officer earned, or was paid to such other person when and as the court directed the same to be paid to them, as the case might be, said portion being herein called and referred to as fund 'e.'

"That the money, composing the residue of said item 'c,' other than fund 'd' and fund 'e,' was by the clerk paid out to the persons depositing the same, or to their successors entitled thereto, under and by virtue of said court rule, as and when the same was and became payable.

"That of the said sum of money composing item 'c' that portion earned by, and paid to, the clerk as fees and emoluments earned by him as clerk (being fund 'd'). was in each case included in, and settled for, in the respective semiannual returns as aforesaid."

The government has demurred to each plea, and all of the cases are now before the court upon such demurrers.

.. Elwood G. Godman, of Chicago, Ill., and Garfield Charles, Asst. U. S. Attys.

Geo. T. Buckingham, of Chicago, Ill., for defendants.

GEIGER, District Judge (after stating the facts as above). From the declarations and pleas we may summarize that the funds, which we may term the "principal" received by the clerks and deposited in the banks and whereon the interest was earned, may be classified into: (a) Moneys deposited by litigants with the clerk subject to be disbursed to himself or to others as occasion may demand in the course of the litigation; (b) fees and emoluments earned by the clerk and paid to himself out of such last above specified deposits—and, as to such earned fees and emoluments, a semiannual account was rendered, the account being charged to himself, and against the same was credited the office expense, the compensation retainable ($3,500 per annum) and the surplus remaining, which latter was always paid to the government.

To put it in another way, the interest moneys in question arose from bank deposits which were constituted from two sources: First, moneys deposited by litigants who, until such moneys were actually covered into fees payable by them, retained the beneficial interest or ownership therein; and, secondly, the fees and emoluments, before a surplus was ascertained and paid over.

What is the character or status, as between the government, the clerk, and the litigant, of the moneys received, upon which, when deposited in the banks, the interest moneys arose, as stated? Are they public moneys whereof the clerk is trustee for the plaintiff government? This is the fundamental question whose answer, if affirmative, will sustain, if negative, will overrule, the demurrers.

· Exhaustive historical reviews of legislation respecting fees of clerks of the federal courts are found in United States v. Hill, 120 U. S. 169, 7 Sup. Ct. 510, 30 L. Ed. 627, United States v. Hill, 123 U. S. 681, 8 Sup. Ct. 308, 31 L. Ed. 275, and United States v. Mason, 218 U. S. 517, 31 Sup. Ct. 28, 54 L. Ed. 1133; and, in considering the question now presented, no purpose will be served by repetition thereof. It will suffice to note that, prior to 1841, clerks were under no obligation to render any account of fees or emoluments to the government. They retained all revenues so coming to their hands. But in that and subsequent years the legislation having the effect of limiting their earnings was inaugurated and continued. The cases cited, and others, deal with the intent embodied in such legislation, and, as will be seen, are persuasive in determining the status or character of the moneys or

revenues which now come, as prior to such legislation came, into clerks' hands in the discharge of official duties.

It will be assumed that the plaintiff seeks recovery of the interest money in its own right; that the failure to account for and pay it to the government is assigned as a breach by the respective clerks of an official obligation to be discharged by them to the plaintiff; that while, as seen from the statement of facts, the defendant clerks have assumed obligations toward litigants respecting the disbursement of deposited moneys and the return to such litigants of any unexpended portion, no breach of any such obligation is assigned as a basis for institution of suit by the government on behalf of others; in other words, the plaintiff seeks recovery of the interest moneys "as the property of the United States." So, too, it will be assumed that, if the revenues coming to the hands of the clerks are in truth public moneys, the property of the government, then any interest earned thereon, no matter when or how, rightfully follows the principal or corpus, as an incident or increment, in no event subject to personal appropriation by the custodian of the principal.

[1] Considering first the interest money as arising upon a fund in part constituted from deposits made by litigants to be drawn against by the clerk for payment of fees as they accrue, certainly neither the clerk nor the government has any interest in such deposits, prior to proper appropriation for the uses intended, except to hold them. Even admitting for the time being that the fees when actually earned and paid are then public funds, the deposit made by a litigant to secure such payment is in no proper sense a fund in or over which the government has obtained the slightest proprietary interest or power of disposition. That interest and right is retained by the litigant, save only as he has surrendered it to the clerk to exercise by drawing against it in the defrayal of fees as and when, under the law, they accrue and are chargeable against the litigant. While the transaction in making the deposit under the rule may not technically be a bailment, the clerk, in the nature of things, stands as a sort of insurer for the return to the litigant of the deposit or such part thereof as shall not have been earned as fees either by himself or others for whose benefit it is made. Certainly the deposit is not made for the benefit of the government. The clerk, under the law, is required to account for fees earned whether they are paid or not; and the rule does not impress such deposit with the character of public moneys or revenues; but is a mere regulation for the protection of the clerk, to guaranty to him in advance, and as an administrative convenience in the discharge of his duties of and in the payment of moneys primarily receivable by him as his compensation. As indicated, if these court rules for deposits were not in force, it would rest with the clerk to insist upon payment of each fee as it is earned, in advance. If he failed to collect, but accounted for it as earned, the loss is his. His failure actually to collect the money from the litigant, while it might so result in loss to him, would not, if he accounted for it to the government, be a breach of any condition of his bond. So long, therefore, as the moneys deposited by the litigant retain their status as a security deposit, the gov-

ernment has and can have no claim to any increment thereof by way of interest.

[2] Coming now to the character or status of the other constituent of the fund upon which the interest money in question arose—the moneys earned by the clerk as official fees and emoluments and which, pending the semiannual accounting and return were deposited in the banks. While it is true that in Bean v. Patterson, 110 U. S. 401, 4 Sup. Ct. 23, 28 L. Ed. 190, the Supreme Court, upon an application for leave to docket an appeal, ruled that, under an act substantially like that governing district court clerks, the clerk of the Supreme Court could demand payment of certain fees in advance; and declared that:

"As the law now stands, the fees and emoluments of the office (clerk of Supreme Court) belong to the government, subject only to the payment of the annual salary of the clerk, necessary clerk hire, and incidental expenses, and the clerk is the collecting agent for the government;"

—and while the Circuit Court of Appeals for the First Circuit, in United States v. Mason, 129 Fed. 742, 64 C. C. A. 270, adopted this expression in considering certain items of a clerk's account as constituting a "necessary expense" of his office; nevertheless, the question respecting the character or status of funds in the hands of a district court clerk prior to his semiannual accounting was directly presented in the recent case of United States v. Mason, 218 U. S. 517, 31 Sup. Ct. 28, 54 L. Ed. 1133, supra; and the ruling therein is, in my judgment, decisive of the present cases. It involved the validity of an indictment charging a clerk of a District Court with embezzling funds in his hands; and required answer to the concrete question whether, before a surplus of moneys in the clerk's hands was ascertained and required to be paid over, the funds received by him were public moneys of the United States. A negative answer is given, based, as the court says, upon consideration of the "history of his·(the clerk's) relation to these moneys and of the statutes which specifically define his rights and duties." Mr. Justice Hughes quotes the language found in United States v. Hill, supra:

"The clerk of a court of the United States collects his taxable 'compensation,' not as the revenue of the United States, but as the fees and emoluments of his office, with the obligation on his part to account to the United States for all he gets over a certain sum which is fixed by law. This obligation does not grow out of any 'revenue law,' properly so called, but out of a statute governing an officer of a court of the United States."

And proceeds:

"But, for the reasons we have stated, even the duty to pay the surplus shown by the return or audit is not governed by the statutes relating to embezzlement, which have been referred to in support of these counts. The amount with which the clerk is chargeable upon his accounting is not the 'public money' or 'the money or property 'of the United States' within the meaning of their provisions. The fees and emoluments are not received by the clerk as moneys or property belonging to the United States, but as the amount allowed to him for his compensation and office expenses under the statutes defining his rights and duties, and, with respect to the amount payable when the return is made, the clerk is not trustee, but debtor. Any other

view must ignore not only the practical construction which the statutes governing the office have received, but their clear intent."

[3] This language, it seems to me, leaves nothing further to be considered except the suggestion made by plaintiff that the interest moneys, being received upon funds which came to and were in the clerk's hands by virtue of his office, should be considered and accounted for as emoluments. What test is afforded in determining whether a sum of money received by an official is an emolument of his office? Certainly this: That the official do some act or perform some service pursuant to the obligation or sanction of his office to or for the benefit of the one paying the money charged to be an emolument; that the one paying the money has the right to exact from the official the rendition of the service, and the official has the right to exact the money return —under official obligation or sanction of the particular office to which the emolument is claimed to attach. To put it in another way: The payment moves to the official in consideration of the rendition by him of some official act or service; the official does the act or renders the service by virtue of his office. The official character of the act is his warrant for exacting the payment.

Now, while it is true that the incumbency of the office of clerk by an individual, his receipt of moneys for fees, emoluments, or deposits by litigants, and the deposit thereof by the clerk in banks, all concur in furnishing or creating the occasion through which he receives interest on the funds in the bank, yet he is not required, therefore cannot and does not deposit the funds in the bank upon an interest-paying basis by virtue of his official obligation; nor can or does he exact the interest from the banks under the sanction of official right or duty. Therefore such interest is not and cannot be an emolument.

In this connection it is further urged by the government that, until the semiannual return is made, the moneys received by the clerk for fees, court costs, etc., belong "to the office of the clerk and not his individual property." It is not possible that the "office" of clerk can be treated as an entity, apart from the government or the clerk, having a proprietary interest or title in or to the funds. If the contention be that, because the moneys are paid to and received by the clerk by virtue of his office and not individually, therefore they are not his individual property, the reply is aptly stated by Mr. Justice Hughes in the Mason Case:

"There has thus been established a distinct system with respect to the fees and emoluments of the clerks. Its features are to be explained by the history of the clerk's office and the requirements of its convenient administration. It is urged that the fees and emoluments are attached to the office, and are received in an official capacity. The consideration, however, does not aid the prosecution, for they were attached to the office before the statute of 1841, when they belonged to the clerk without any duty * * * to account for * * * them."

This last observation suggests the query if, prior to the passage of these statutes, the clerk had deposited in the bank all moneys received by him as clerk and had received interest on his daily credit balance, could it reasonably be claimed that such interest money was an emolu-

ment of his office? It is my judgment, that, whatever effect these various statutes may have, they do *not* have the effect of transforming into fees and emoluments, payments which, prior to their passage, were not fees and emoluments received for the discharge of official duties. They furnish no new tests for determining the character of funds received by the clerk. Nothing demonstrates this more clearly than United States v. Hill, supra, and the amendment to the statute which ensued the rendition of that decision. There, a clerk of the District Court, by direction of the judge, rendered services by way of assistance in naturalization proceedings—the preparation of cases for hearing, examination of witnesses, and the like—for which he collected compensation from the applicants. It was sought to compel him to account for the moneys thus received; but, as the duties were held not to pertain to the office of clerk, he was not obliged to include them in his return. A law subsequently enacted by Congress declared such compensation subject to be accounted for as other fees and emoluments—doubtless to avoid the effect of the ruling referred to.

The conclusion to be drawn from the Mason Case would therefore appear to be: That the statutes which have been passed since 1841 do not abolish, but on the contrary were and are intended fully to recognize and continue in force, the pre-existing system of compensating clerks of courts by means of fees and emoluments collected from persons who as litigants or otherwise are recipients of their official services; that the fundamental purpose of these statutes is (1) to place a limitation upon the aggregate amount of compensation which may be received by clerks through such system; (2) to impose upon the clerks the obligation to pay to the government—of which they are officials—the excess beyond such limitation; (3) to provide the manner and means, semiannually, of reducing such obligation to concrete terms, by requiring returns, accounting and the like; and (4) the manner and means of securing performance by the clerks of the statutory obligation to pay the excess, if and when ascertained. This conclusion, and no other, is reconcilable with the Supreme Court's view that the clerk is not a trustee, but a debtor, of the government. Of course, when a clerk has breached his obligation with respect to holding and properly disbursing moneys deposited by litigants, the power of the government as obligee in the bond given by the clerk, to sue on behalf of and vindicate the litigant's rights, cannot be denied. United States v. Abeel, 174 Fed. 12, 98 C. C. A. 50. That does not impress the amount sought to be recovered with the character of public revenues. The bond is given to secure the faithful discharge of the official's duties, whatever they may be and to whomever they may be owing; and the fact the government is obligee therein is of no importance save as a participation by it to make secure and effective the "distinct system" of having the features noted, viz., compensation of the clerk, not out out of public revenues, but by fees from litigants, with the obligation on the clerk to pay to the government the excess over a specified amount.

The conclusion is that the demurrers must be overruled, and orders may be entered accordingly, in each of the nine cases.