## UNITED STATES *v.* F. L. DAVIS.

## May 29, 1916.

1. *Clerks of courts—Clerks of Federal Courts—Deposit of moneys— Duty:* Rev. Stat., secs. 995, 996, respectively provide that all moneys paid into any court of the United States or received by the officers thereof in any cause pending or adjudicated in such court shall be forthwith deposited with the Treasurer, Assistant Treasurer, or a designated depositary, to the credit of the court, but that nothing shall be construed to prevent the delivery of any such money upon security according to the agreement of the parties under the direction of the court, and that no money shall be withdrawn, except by order of the court or judges of the courts. There is no statutory provision authorizing clerks of courts to require deposits to secure their fees specified by Rev. Stat. sec. 828, though such practice is authorized by the rules of court. Bankruptcy Act July 1, 1898, c. 541, secs. 51, 52, 30 Stat. 558, providing for prepayment to the clerk of the fees of clerk, referee, and trustee, do not require such moneys to be forthwith deposited with the Treasurer, Assistant Treasurer, or a designated depositary. Act March 3, 1841, c. 35, 5 Stat. 421, first reduced the emoluments of clerks of courts to sums less than the fees collected, and the United States, though a party to suits, is not required to pay clerks' fees, unless the other sums received shall be insufficient to satisfy the expenses of his office and defray the clerk's salary, while Rev. Stat. sec. 844 requires every District Court clerk, at the time of making his half-yearly return to the Attorney General, to pay into the Treasury or deposit to the credit of the Treasury any surplus of the fees and emoluments of his office, which the return shows there is existing over and above the compensation and office allowance authorized by law to be retained by him. *Held,* that a clerk of a District Court is not required to forthwith deposit with the Treasurer, Assistant Treasurer, or a designated depositary, moneys deposited with him by parties to secure costs; there being no duty to make such deposit until the time of settlement, when the clerk is required to account for all sums in excess of those which he is allowed to retain.

2. *Courts—Clerks of courts—Duties of—Territory of Hawaii:* Though Act April 30, 1900, c. 339, 31 Stat. 141, providing a government for the Territory of Hawaii, declares in section 86 that the District Judge shall appoint a clerk for the court at a salary of $3,000 per annum, the clerk is not relieved from the duty of making

returns of his earnings, and, being entitled to retain out of his fees those sums necessary for the expenses of his office, is not bound to forthwith deposit with the Treasurer, Assistant Treasurer, or designated depositary, the sums deposited with him as security for costs.

3. *Embezzlement—Offense—What constituees:* Under Penal Code (Act March 4, 1909, c. 321) sec. 99, 35 Stat. 1106, declaring that whoever, being a clerk or other officer of a court of the United States, shall fail forthwith to deposit any money belonging to the registry of the court, or hereafter paid into court or received by the officer's thereof, with the Treasurer, Assistant Treasurer, or a designated depositary, in the name and to the credit of the court, or shall retain or convert to his own use or to the use of another any such money, is guilty of embezzlement, a clerk of the Federal court in Hawaii, who did not forwith deposit sums received by him as security for costs to be incurred, is not guilty of embezzlement, where none of such moneys belonged to the United States, and he had not refused to make the regular settlements for the surplus of fees and emoluments collected above the amounts he was entitled to retain for his services and expenses of his office.

4. *Embezzlement—Offense—What constitutes:* In such case, as the clerk was not required to forthwith deposit moneys received as security for costs, the failure of the deputy clerk to make such deposits did not render him guilty of embezzlement, within Penal Code, section 99.

5. *Indictment and information—Validity—Statutes:* Where an indictment charging an offense follows the language of one particular statute and not that of a second it cannot be sustained as charging a violation of the second statute.

6. *Indictment and information—Offenses—Statutes:* Penal Code, section 97, declares that any officer connected with or employed in the Internal Revenue Service of the United States, and any assistant of such officer, who shall embezzle or wrongfully convert to his own use any money or property of the United States, or any money or property which may have come into his possession or under his control in the exercise of such office or employment, or under color or claim of authority as such officer or assistant, whether the same be the money or property of the United States or of some other person or party, shall, where the offense is not otherwise punishable, be fined not more than the value of the money and property thus embezzled or converted, or imprisoned not more than 10 years, or both. An indictment charged that a deputy clerk of the Federal court of Hawaii, who received moneys deposited with him as clerk of the court by

parties to suits, actions, and proceedings to pay and secure the payment of costs in such proceedings, failed to forthwith deposit them with the Treasurer, Assistant Treasurer, or with a designated depositary, and that he retained, embezzled, and converted to his own use such moneys. *Held*, that as the clerk was not required to make such deposits, and as it did not appear that he had failed to account for such moneys at the regular periods for accounting, and that none belonged to the United States, the indictment did not charge an offense under the section.

*Indictment* (for violation of Penal Code, sec. 99.) : On demurrer to the indictment.

*S. C. Huber,* U. S. District Attorney, for the United States.

*E. C. Peters, R. W. Breckons, C. S. Davis, A. D. Larnach* and *L. M. Straus,* for defendant.

MORROW, Circuit Judge (sitting in place of Clemons, J., disqualified). The indictment in this case contains nine counts. In counts numbered 1, 2, 3, 4, 5, 7, 8, and 9 it is charged in substance that during certain specified periods the defendant was a deputy clerk of the United States District Court for the Territory of Hawaii, and as such deputy clerk he had in his possession and under his control certain moneys which he was required by law forthwith to deposit with the Treasurer, or Assistant Treasurer, or a designated depositary of the United States; that he failed forthwith to deposit said moneys as required by law, and did not deposit said moneys with the Treasurer, nor with the Assistant Treasurer, nor with a designated depositary of the United States; that he retained, embezzled, and converted to his own use the moneys mentioned; that the moneys so retained, embezzled, and converted to his own use were moneys deposited with him as deputy clerk of said court by parties to suits, actions, and proceedings in said court to pay and to secure the payment of costs in such

proceedings. In count numbered 6 it is alleged that during a certain other period mentioned the defendant was the clerk of the United States District Court for the Territory of Hawaii, and as such clerk he had in his possession and under his control certain moneys which he was required by law forthwith to deposit with the Treasurer, or Assistant Treasurer, or a designated depositary of the United States; that he failed forthwith to deposit said moneys as required by law and did not deposit said moneys with the Treasurer, nor with the Assistant Treasurer, nor with a designated depositary of the United States; that he retained, embezzled, and converted to his own use the moneys mentioned; that the moneys so retained, embezzled, and converted to his own use were moneys deposited with him as clerk of said court by parties to suits, actions, and proceedings in said court, to pay and to secure the payment of costs in such proceedings.

[1] It is nowhere charged that any moneys so deposited with the defendant as clerk or deputy clerk were moneys of the United States. On the contrary, it is specifically alleged in all the counts of the indictment that the moneys so deposited with the defendant as clerk and deputy clerk were moneys of persons other than the United States.

In counts numbered 1, 3, 4, 7, and 8 it is alleged that the moneys so deposited with the defendant as deputy clerk were deposited with him by persons others than the United States, who were parties to suits, actions, and proceedings in said court, other than proceedings in bankruptcy, and the moneys were to pay and to secure the payment of costs in such proceedings. In counts numbered 2, 5, and 9 it is alleged the moneys so deposited with said defendant as deputy clerk were deposited by persons other than the United States, who were parties to proceedings in bankruptcy in said court, and the moneys were to pay and to secure the payment of costs in such proceedings. In count numbered 6 it is alleged that the moneys deposited with defendant

as clerk were deposited by persons other than the United States, who were parties to suits, actions, and proceedings in said court, and the deposits were made to pay and to secure the payment of costs in such proceedings, without distinguishing whether the proceedings were in bankruptcy or in suits and actions between individuals.

To this indictment, the defendant has interposed a demurrer, in which the objection is made that it does not charge any offense against the laws of the United States, and is not sufficient in law to be answered.

Section 99 of the Penal Code of the United States (section 5504 of the Revised Statutes) provides as follows:

"Whoever, being a clerk or other officer of a court of the United States, shall fail forthwith to deposit any money belonging in the registry of the court, or hereafter paid into court or received by the officers thereof, with the Treasurer, Assistant Treasurer, or a designated depositary of the United States, in the name and to the credit of such court, or shall retain or convert to his own use or to the use of another any such money, is guilty of embezzlement, and shall be fined not more than the amount embezzled, or imprisoned not more than ten years, or both; but nothing herein shall be held to prevent the delivery of any such money upon security, according to agreement of parties, under the direction of the court."

The language of the several counts of the indictment indicates that they are all based upon this section of the Penal Code, and the indictment is so indorsed. Do the facts alleged bring the charges within the terms of the statute?

There are moneys required by law to be paid to and received by the clerk or deputy clerk of the District Court in his official capacity as clerk or deputy clerk, which moneys, when received, the clerk or deputy clerk is required forthwith to deposit with the Treasurer, or Assistant Treasurer, or a designated depositary of the United States. These are moneys which he may receive by virtue of his office, and are required by law to be paid into court and forthwith

deposited with the Treasurer, Assistant Treasurer, or a designated depositary of the United States; and the moneys so deposited can only be withdrawn by order of the judge or judges of said court. See sections 995, 996, 4543, and 4545 of the Revised Statutes. The last sentence of the statute providing for the delivery of the deposited money upon security clearly identifies the deposit there referred to as money deposited in court, as distinguished from money paid to the clerk as costs or as security for costs. Are the moneys paid to and received by the clerk or deputy clerk, as deposits made by individuals to pay and to secure the payment of costs, also required by law to be forthwith deposited with the Treasurer, Assistant Treasurer, or a designated depositary of the United States?

It should be stated preliminarily that there is no law requiring individuals to make any deposit of moneys to secure in advance the payment of costs in any action, suit or proceeding in court, except in bankruptcy.

Section 828 of the Revised Statutes prescribes in detail the fees which a clerk of the court may earn for his official services in all cases. Those fees range in amount from 10 cents to $3, and a specific sum is fixed for each individual service rendered, however small. Take, for example, the following items in the long schedule of fees:

"For filing and entering every declaration, plea, or other paper, ten cents.

"For issuing a writ of summons or subpoena, twenty-five cents.

"For issuing and entering every process, commission, summons, capias, execution, warrant, attachment, or other writ, except writ of venire, or a summons or subpoena for a witness, one dollar.

"For making dockets and indexes, issuing venire, taxing costs, and all other services, on the trial or argument of a cause where issue is joined and testimony given, three dollars."

It was found in practice inconvenient and impracticable

to collect these fees from litigants at the time each service was rendered. Thereupon the courts provided by rule for a deposit by them with the clerk of the court of a sum of money to pay and secure the payment of costs of court as they accrued. This method of securing the payment of costs, although not provided for by law, has had the sanction of general adoption by the courts, long usage, and recognition by the Department of Justice in regulations.

In bankruptcy proceedings, the deposit to secure costs is recognized by law. Section 51 of the Act of July 1, 1898, providing a uniform system of bankruptcy throughout the United States (30 Stat. 559), provides that:

"Clerks shall respectively . . . collect the fees of the clerk, referee, and trustee in each case instituted before filing the petition, except the petition of a proposed voluntary bankrupt which is accompanied by an affidavit stating that the petitioner is without, and can not obtain, the money with which to pay such fees; . . . and within ten days after each case has been closed [the clerk shall] pay to the referee, if the case was referred, the fee collected for him, and to the trustee the fee collected for him at the time of filing the petition."

Section 52 of the act provides that:

"Clerks shall respectively receive as full compensation for their service to each estate, a filing fee of ten dollars, except when a fee is not required from a voluntary bankrupt."

There is no law requiring these prepaid fees in bankruptcy or in other cases to be forthwith deposited with the Treasurer, Assistant Treasurer, or a designated depositary of the United States; but the clerk may, as a matter of convenience and for his own safety and security, deposit the moneys so received in bankruptcy and other cases to his individual account or to his account as clerk of the court in any bank, although he is not required by law to make such a deposit anywhere in the name or to the credit of the court. In other words, it is plainly and distinctly not a court fund, nor a fund belonging to the United States.

Prior to the Act of March 3, 1841 (5 Stat. 421, 428, c. 35), the fees and emoluments received by the clerks of the Supreme and District Courts of the United States were their own property; but since the passage of that act the amounts retained by such clerks have been specified sums as compensation, together with office and other expenses allowed by the accounting officers of the Treasury, the overplus to be paid into the Treasury. The purpose of this statute was manifestly to enable the accounting officers of the Treasury to limit the office expenses of the clerks of the courts. It follows that a system of accounting has been required and provided in dealing with the fees, compensation, allowances and accountability of the clerks of courts.

This necessity for a proper system of accounting is further emphasized by the fact that the United States, although a party to many suits, actions, and proceedings in the courts of the United States, makes no deposits to pay or to secure the payment of fees earned by the clerks in United States cases, nor does the United States, since the act of 1841, pay the clerks any fees for services rendered the United States in such cases, unless the fees collected by the clerks in all cases shall be less than the sum allowed them by law for annual compensation and office expenses. In other words, a clerk is entitled to retain out of his earned fees the compensation allowed him by law, together with the amount allowed him for his office expenses; but should his earnings, after the deduction of his compensation and necessary office expenses, exceed the said sum upon any half-yearly emolument return, the surplus must be paid into the Treasury of the United States upon a warrant from the Attorney General. Section 844 of the Revised Statutes.

Pursuant to this feature of the law, the clerk is required to make a quarterly return to the Department of Justice of all fees of every kind earned by him from the United States during the quarter covered by the return; and if

at the end of the half year, upon an adjustment of his accounts, it is found that he has earned in fees from individuals a sum more than sufficient to pay his semi-annual compensation and expenses of his office, then he must pay the excess into the Treasury of the United States and he receives nothing from the United States for his services in United States cases; but if the sum earned in fees from individuals is not sufficient to pay his semi-annual compensation and expenses of office, the United States will allow him the difference between the sum earned and the amount of his semi-annual compensation including expenses of office.

[2] The act of Congress entitled "An act to provide a government for the territory of Hawaii," approved April 30, 1900 (31 Stat. 141, 158, c. 339), provides in section 86 that:

"The said District Judges shall appoint a clerk of said court at a salary of three thousand dollars per annum."

But this act does not relieve the clerk from the duty of making a quarterly return of his earnings in United States cases, nor from the duty of making the half-yearly emolument return of all fees and emoluments of his office; nor does it relieve the accounting officers of the Treasury from the duty of auditing and allowing the clerk, over and above his personal compensation provided in the act, his necessary office expenses including clerk hire; and the act does not require that deposits for costs shall be paid into the Treasury prior to such return and audit. The relation of the clerk to such deposits is, therefore, precisely the same in Hawaii as in other districts under the general statute in that behalf.

This method of compensation and allowances for expenses requires a system of accounting, carried on by the accounting officers of the Treasury, to ascertain and determine what portion of the fees earned by the clerk may be retained by him as compensation and for expenses of his office, and what

portion he will be required to pay into the Treasury as surplus earnings of his office.

[3] It is not alleged in the indictment that any of the amounts charged to have been embezzled by the defendant was shown by any return of his to be a surplus of fees and emoluments of his office as clerk and deputy clerk, over and above the compensation and allowances authorized by law to be retained by him, or that the accounting officers of the Treasury had so found, or that he had been directed by the Attorney General, after such audit, to pay into the Treasury or to the credit of the Treasurer any of said amounts as surplus fees and emoluments of his office; and such an allegation, if it had been made, would have been wholly inconsistent with the charge that, upon receiving the deposits, it was his duty forthwith to deposit the same with the Treasurer, Assistant Treasurer, or a designated depositary of the United States.

We find the statutes with respect to the clerks' fees fully and clearly discussed and explained in *United States v. Mason*, 218 U. S. 517, 531, where the Supreme Court had under consideration charges of embezzlement preferred against a clerk of the District Court for failure to faithfully keep the public moneys which had come into his possession and control by virtue of his office, said public moneys being a portion of the surplus fees and emoluments of his office. The court held that even the duty to pay the surplus fees, as shown by the return or audit, was not governed by the statutes relating to embezzlement. The court said further:

"The amount with which the clerk is chargeable upon his accounting is not the 'public money' or 'the money or property of the United States' within the meaning of their provisions. The fees and emoluments are not received by the clerk as moneys or property belonging to the United States, but as the amount allowed to him for his compensation and office expenses under the statutes defining his rights and duties, and with respect to the amount payable when the return is made the clerk is not trustee, but debtor.

Any other view must ignore, not only the practical construction which the statutes governing the office have received, but their clear intent."

[4] The United States Attorney contends, however, that the counts in the indictment charging the defendant as deputy clerk with the offense of embezzling the moneys deposited with him in the cases mentioned distinguish the charges in such counts from the charges in the *Mason* case, wherein the defendant was clerk of the court. The contention is that the deputy clerk, having a specific allowance for his services as deputy clerk, has no interest in the deposits to be determined by an accounting, and he is therefore required forthwith to deposit such moneys with the Treasurer, Assistant Treasurer, or a designated depositary of the United States.

The objection to this view of the case is that we are dealing with deposits with the clerk, and not with the compensation of the clerk or deputy clerk. The question is: What was the duty of the clerk or deputy clerk with respect to these deposits? Was it their duty, when the money was received, to forthwith deposit the same to the credit of the court in the depositaries mentioned? If they were not so required, and such is our conclusion, it makes no difference whether the moneys were received by the clerk or a deputy clerk. With respect to a duty of this character, the law does not distinguish between a clerk and a deputy clerk; their duty to the fund is precisely the same.

[5], [6] The United States Attorney further contends that the indictment may be supported under section 97 of the Penal Code (Act Feb. 3, 1879, c. 42, 20 Stat. 280). That section provides:

"Any officer connected with, or employed in, the Internal Revenue Service of the United States, and any assistant of such officer, who shall embezzle or wrongfully convert to his own use any money or other property of the United States, and any officer of the United States, or any assistant of such officer, who shall embezzle or wrongfully convert

to his own use any money or property which may have come into his possession or under his control in the execution of such office or employment, or under color or claim of authority as such officer or assistant, whether the same shall be the money or property of the United States or of some other person or party, shall, where the offense is not otherwise punishable by some statute of the United States, be fined not more than the value of the money and property thus embezzled or converted, or imprisoned not more than ten years, or both.''

The first objection we find to the application of this statute to the charges contained in the indictment is that the charges in the indictment do not follow the language of the statute; and the second is that the facts constituting the charge of embezzlement are set forth with particularity in the various counts of the indictment, and we have already found that they do not constitute embezzlement, nor do they, in our opinion, show that the defendant wrongfully converted to his own use any money or property which came into his possession or under his control in the execution of his office or employment. On the contrary, we have found that he rightfully came into the possession of the moneys charged to have been received by him and that he did not convert such moneys to his own use, except in so far as authorized by statute to take and hold possession of such moneys until a return and audit had determined his further duty with respect to these deposits. As said by the Supreme Court in the *Mason* case, 218 U S. at page 529:

"There has thus been established a distinct system with respect to the fees and emoluments of the clerks. Its features are to be explained by the history of the clerk's office and the requirements of its convenient administration. It is urged that the fees and emoluments are attached to the office, and are received in an official capacity. This consideration, however, does not aid the prosecution, for they were attached to the office before the statute of 1841, when they belonged to the clerk without any duty on his part to

account for any portion of them. The fees and emoluments stand in a different category from other moneys which he may receive by virtue of his office, as, for example, moneys paid into court. Revised Statutes, sections 995, 996."

Again, on page 530 of 218 U. S., the court says:

"None of the statutes relating to embezzlement of moneys or property of the United States, which we have quoted, affords a basis for the counts in question."

The act of February 3, 1879 (20 Stat. 280), the original of section 97 of the Penal Code, is one of the statutes quoted by the Supreme Court on page 521. The court proceeds:

"There may be an honest difference of opinion with regard to the amount, the payment of which from the fees collected may properly be allowed. Provision has been made for the examination of the matter and for the ascertainment of the amount due. Pending such audit there would be no justification for indicting the clerk as an embezzler, upon the allegation that he had in his hands a surplus which he had converted to his own use. It is not a question of public moneys, which are to be deposited as such, and are to be disbursed in accordance with the Treasury system. A fixed compensation is to be retained, the expenses of the office are to be defrayed, and the question of the necessity of the expenses is to be passed upon, and the clerk is not in default until he refuses or fails to make his return or to pay over the surplus shown by his return to exist, or the amount found upon the audit of his accounts to be payable. We have not before us a case where a clerk has refused or failed to make the return required by statute, or to pay over the surplus shown by his return to exist, or established by the audit."

The case of *United States v. MacMillan*, 209 Fed. 266, 271, is the title to nine actions at law in a District Court of Illinois to recover upon alleged breaches of official bonds. Six of these actions were against clerks of the District Court, and three against the clerk of the Circuit Court of Appeals. The breaches alleged consisted in the failure of the clerks to account and pay over to the United States

certain specified sums of money received by the clerks as interest on moneys which had been paid to the clerks as deposits to secure the payment of fees in bankruptcy and other cases. The deposits were identical with the deposits in the present case. To the several declarations pleas were interposed setting forth the proceedings under which the deposits were made with the clerk. The United States demurred to their pleas on the ground that they constituted no defense to the actions. The court overruled the demurrers, following the *Mason* case and holding that the United States had no right or title to any interest the clerk might receive on the fund pending his semi-annual return, either as increment of the fund or as an emolument of the office, and as such to be accounted for. The case appears to us to be an extreme one in favor of the right of the clerk to the exclusive and unqualified possession and use of all deposits made with him to secure the payment of costs until such time as he makes his emolument return and an accounting is had as required by the statute, but we are of the opinion that the decision is justified under the law as declared by the Supreme Court in the *Mason* case.

It follows that, in our opinion, the indictment in the present case does not state an offense against the United States. The demurrer must therefore be sustained, and the indictment quashed; and it is so ordered.

*Reversed, United States v. Davis,* 243 U. S. 570.