J. W. RAST, *Plaintiff in Error,* v. THE STATE OF FLORIDA, *Defendant in Error.*

Opinion Filed May 10, 1920.

1. Upon the trial of an indictment for embezzlement the offense being alleged in a general way a bill of particulars should be furnished to the defendant upon proper application by him.

2. Where a Tax Collector is charged with embezzlement of the funds belonging to the State and county and the records of his office are in the custody of the court who grants the defendant permission to examine them only in presence of a representative of the State appointed by the attorney prosecuting for the State the records are not so freely available to the defendant as to warrant the denial of his right to a bill of particulars when application is duly made therefor.

3. Section 3317, General Statutes of Florida, 1906, denouncing the crime of embezzlement by State, county or municipal officers applies also to any deputy, clerk or employee in any State, county or municipal office.

4. In a Tax Collector's office where clerks, bookkeepers or assist-
ants may be employed, if such employees should receive and
convert tax monies to their own use, their culpability would
not be imparted to their employer in the absence of any
showing of guilty knowledge on his part.

5. To maintain a charge of embezzlement of· State or county
funds under Section 3317, General Statutes of Florida, it is
necessary to prove that the money alleged to have been em-
bezzled came into the possession of the accused, or under his
control, and was converted by him to his own use or secreted
or withheld by him with such intention.

6. In the trial of a Tax Collector upon a charge of embezzlement
of State or county funds, where the defendant is deemed to be
entitled to have a bill of particulars, that instrument should
set forth the dates when the monies were received by the
accused according to the evidence upon which the State relies.

7. ·Evidence examined and found insufficient to support the ver-
dict.

A writ of error to the Criminal Court of Record for
Duval County, J. M. Peeler, Judge.

Judgment reversed.

*J. H. Bunch* and *Wm. A. Hallowes,* for Plaintiff in
Error;

*Van C. Swearingen,* Attorney General, and *D. Stuart
Gillis,* Assistant, for the State.

ELLIS, J.—The plaintiff in error was convicted in the
Criminal Court of Record for Duval County upon an in-
formation charging him with the crime of embezzlement in
three counts. He seeks here to reverse the judgment upon
writ of error.

The information charged that Rast was Tax Collector for the County of Duval from November 1st, 1916, until September 8, 1918. There is a slight variation in these dates as alleged in the third count of which no further notice will be taken. The first count alleges that during that period he "did by virtue of his said office, receive and take into his possession certain monies, to-wit, twenty-seven thousand, seven hundred and ninety-eight dollars and twenty-five cents" on account of the State of Florida, "and after so receiving said monies as aforesaid" he embezzled and converted the same fraudulently to his own use on the last named date. The second count charges the embezzlement by him in the same manner on the same date of $110,589.75, the property of the County of Duval. The third count charges the embezzlement by him of $450.00, the property of the County of Duval.

The defendant moved for a bill of particulars as to each of the counts and that such bill should contain information as to whether the money alleged to have been received by the defendant was for license taxes, or poll taxes or taxes upon real or personal property, the names of the persons who paid the taxes, the date of payment, the amounts paid, the name of the person to whom paid, and the fund or funds to which the tax money so received should have been applied. The record shows that upon the day this application was made the defendant pleaded to the information. His affidavit in support of the motion shows that the plea had been filed when the motion was made. The judge of the court made an order to the effect that in so far as a bill of particulars, which had been prepared and submitted, met the requirements of the motion the latter was granted; but denied in so far as the motion required information not con-

tained in the bill. It was further ordered that the defendant and his counsel be "permitted to examine the public records and books from which the bill of particulars has been prepared and upon which the bill of particulars and the allegations of the information are based provided, however, that such examination shall be made in the presence of a representative of the State of Florida designated by the County Solicitor of this court." A copy of the bill of particulars filed was ordered to be delivered to the defendant.

The bill of particulars filed covered the tax rolls for the years 1916 and 1917. They showed in one item the total amount of collections on account of State taxes for the year 1916 and in one item the total collections on account of State taxes for the year 1917, and in many items for each year the payments made. According to the bill of particulars the payments on the roll for 1916 extended over a period from December 4, 1916, to September 7, 1918, and on the roll for 1917 the payments covered the period beginning November 7, 1917. For the year 1916 the deficit thus shown appeared to be $7,747.00, and for the year 1917, $20,051.25, making the total sum of $27,798.25 deficit on account of State taxes upon the rolls for the two years, the amount charged in the first count of the information to have been embezzled of State funds.

As to the county monies alleged to have been embezzled the bill of particulars showed for each year the total amount of collections on account of each fund and on separate sheets the amount of payments made by him, which upon the tax roll of 1916 covered a period from December 2nd, 1916, to August 19th, 1918, and upon the tax roll of 1917 a period from November 5, 1917, to September 18, 1918. These deficits aggregated the total

amount charged in the second and third counts of the information. The amount alleged to have been embezzled, according to the third count, is $450.00, which, according to the bill of particulars, was the amount of the alleged deficit on account of poll taxes on the roll for 1917, but the bill did not confine these items to the third count. The record proper and the bill of exceptions show that a motion was made for a more specific bill of particulars, which motion was denied.

In the case of Thomas v. State, 74 Fla. 200, 76 South. Rep. 780, we said that the right of a defendant to demand a bill of particulars and of the court to direct one independent of express statutory authority may be considered as settled in this State. See also Thalheim v. State, 38 Fla. 169, 20 South. Rep. 938; Brass v. State 45 Fla. 1, 34 South. Rep. 307; Mathis v. State, 45 Fla. 46, 34 South. Rep. 287; Ellis v. State, 74 Fla. 215, 76 South. Rep. 698. It is unnecessary to repeat here the court's reasoning by which it arrived at that conclusion. Mr. Justice LIDDON, in speaking for the court in the Thalheim case, quoted from the case of State v. Rowe, 43 Vt. 265, in which the court said: "That the rule was made with the view of satisfying the provision of the 10th Article of the Bill of Rights of our State Constitution, which gives the accused in all prosecutions for criminal offenses a right 'to demand the cause and nature of his accusation.' " Any other view of the law, this court said, would be in conflict with that section of the Bill of Rights of our State Constitution. See Sec. 11 Bill of Rights.

In the Thalheim case the court approved the authorities which held that an indictment for embezzlement alleging the offense merely in a general way is one upon which

a bill of particulars should be furnished upon proper application by the defendant. In that case the affidavit of the defendant filed in support of the application showed that the transactions between him and the corporation involved large amounts of money and that the accounts between the parties were complicated and intricate. The same conditions existed in the case at bar so far as the magnitude and intricacy of the transactions were concerned, but in this case the accusation against the defendant rested upon the public records and reports which were made by him or under his direction and supervision as was said in the case of Branch v. State, 76 Fla. 558, 80 South. Rep. 482, in which case it was said that it was "hardly conceivable that he (Branch) could have been misled or embarrassed in the preparation or the conduct of his defense by the failure of the State to furnish him with information from public records which the law required him to make and preserve in the performance of his official duties."

This statement is undoubtedly accurate where the records are in the custody of the official charged with embezzlement or freely available to him for investigation. In this case, however, it appears from the order of the court that these records were in the custody of the court and the defendant and his counsel were permitted to examine them only upon certain conditions, namely, "in the presence of a representative of the State of Florida designated by the County Solicitor of this court." The mere fact that the records "were kept by him or under his direction and supervision" obviously would not afford him the notice to which he is entitled unless he was at liberty to inspect them; for it is not at all likely that a person who occupied the position of Tax Collector of

a large and populous county carrying a yearly tax roll containing assessments against real and personal property amounting to more than a million dollars and the name of many thousand persons, could carry in his memory for two years the many transactions of his office merely because he personally made the records of his office, or that they were made by clerks employed by him under his supervision. If at the time of filing the information or the arraignment of the defendant upon it, the court had the custody of the public records which contained the information sought by the defendant and to which he was entitled to enable him to prepare his defense, it would seem that the reason would be greater why the information should be supplied. The bill of particulars which was supplied by the State, a copy of which was directed by the court to be furnished without delay to the defendant or his counsel, did not contain the necessary information to enable the defendant to prepare his defense. The defendant was charged with the embezzlement of State and county funds, which it was alleged came "into his possession by virtue of his said office" and received by him. The section of the General Statutes of Florida, 1906, under which the prosecution was laid provides that the section shall apply to any deputy clerk or employee in any State, county or municipal office. Sec. 3317 General Statutes of Florida, 1906, Compiled Laws, 1914. Under Section 542 of the General Statutes, Tax Collectors are authorized to appoint deputies "to levy upon and seize personal property for unpaid taxes," etc. While this provision of the statute seemingly limits the power of the Tax Collectors to the appointment of deputies for a certain purpose, the practice is common for Tax Collectors to employ clerks, bookkeepers and assistants in their offices, especially in large counties

where the business of the office is so large and transactions so numerous that such help is necessary to the efficient administration of the duties of the office. And it was asserted in oral argument in this case and not denied that the record shows such to have been the custom with the defendant during his occupancy of the office.

In a Tax Collector's office where such custom prevails, any clerk, deputy or employee of such officer who by reason of his employment receives into his possession in due course of the transactions of the office any money for State or county taxes and should convert the same to his own use, or secrete or withhold the same with intention to convert it to his own use, such employee, clerk or deputy would undoubtedly be amendable to punishment under the provisions of the said section of the General Statutes. And the culpability of such clerk or deputy would not be transmitted to his employer or imparted to him in the absence of guilty knowledge on his part.

To maintain a charge of embezzlement of State or county funds against a Tax Collector under the section of our statutes mentioned, it is necessary therefore for the State to prove that the money alleged to have been embezzled came into the possession of the accused and was converted by him to his own use or secreted or withheld by him with such intention. While the duplicate tax receipts which are in the form furnished by the State Comptroller and which are required to be used and which become a part of the records of the Tax Collector's office, and which purport to be signed by the accused as Tax Collector, are admissible in evidence—as was said in the Branch case *supra*, and again in White v. State, 78 Fla. 52, 82 South. Rep. 602, it may be the only

available evidence of the receipt of such monies by the defendant without which the prosecution would fail. A bill of particulars, therefore, in such a case when one is deemed necessary should set for the dates when the monies were received by the accused according to the duplicate tax receipts upon which the State relies for proof as to that element of the case, even if it is unnecessary to name the person who paid. Such a procedure would advise the accused of the nature and cause of the accusation against him, and enable him to prepare his defense; but to merely give in detail the dates when he paid money over to the State and county furnished him with no information valuable to him in the preparation of his defense. He is accused of receiving the money and converting it to his own use. To be advised of the dates upon which he received it is the information the accused desired and to which he is entitled. The money which he paid over to the State and county certainly is not that which he converted to his own use. It is the latter which he desired to be informed about. The bill of particulars furnished by the State in this case was even more general in its terms than the information charging the defendant with the offense as to the necessary elements of receipt of the monies and conversion of the same.

The question then arises, was the opportunity afforded him by the court to examine the records sufficiently to enable him to prepare his defense? The order was made January 18th, and the case was called for trial ten days later. In view of the large record and great number of exhibits in this case the length of time allowed for the examination of the records under the terms prescribed would seem to be inadequate; but no complaint was made

by the defendant, and so according to the doctrine announced in the Branch case, the defendant having himself made the records, or directed or supervised the making of the same, and being allowed by the court opportunity to examine them as he desired, and no complaint being made of the terms prescribed by the court, no error is made to appear in this feature of the case. This disposes of the sixth, seventh, eighth and ninth assignments of error.

The first, second and third assignments of error question the sufficiency of the evidence to sustain the verdict. The one point insisted upon by counsel for the plaintiff in error in these assignments of error and which was emphasized upon the oral argument is, that, there was no evidence to show that the money alleged to have been embezzled by the defendant was received by him, or same into his possession or control. In reply to this it is urged in behalf of the State that the duplicate tax receipts submitted in evidence show the receipt of the money by the defendant, but his counsel assert in their brief and in oral argument repeated the assertion that the record shows that the receipts were not signed by the defendant. This statement of fact was not denied either in the brief of the Attorney General or by him upon the oral argument. We have examined the extensive record with the view of ascertaining if there was any proof of the signature of the defendant to any of the receipts offered in evidence to establish the reception of money by him on account of taxes which he converted to his own use and we have found nothing to establish such a fact. It is, of course, possible that we may have overlooked some word or statement in the great record consisting of 2089 pages of typewritten matter, upon which the jury may have

found that the accused actually received into his possession all the monies which the duplicate receipts show were received at the office upon the tax rolls of the two years, but as the attorneys for the plaintiff in error asserted both in their briefs and in the oral argument that no such evidence is contained in the record, and as that assertion is not denied by counsel for the State, and as we have upon the examination made by us failed to discover such evidence, we assume that there was no such direct or positive evidence.

Upon what evidence then does the State rely to establish the allegation that the defendant "did by virtue of his said office receive and take into his possession certain monies," etc., which monies "so received and coming into his possession as aforesaid," he did "embezzle and feloniously convert to his own use?" The testimony of Mr. McIntosh, the State Auditor, does not establish the allegation. He took the duplicate tax receipts and the "tax day-book record," in which the reecipts were listed numerically and checked one by the other. He then added the amounts shown by these entries and the amount received from tax sales according to the report of individual certificates made to the clerk of the court. "Those things represented what he (the defendant) himseld had collected on these two rolls," said Mr. McIntosh, "according to the record in his office." To these entries of course, were added the poll tax collections for 1917, which were ascertained by counting the poll tax receipt stubs, eliminating those marked void. Mr. McIntosh, of course, spoke from the books of accounts and records of the defendant's office. His audit seems to have been thorough. And as to the matter of bookkeeping, his testimony was, no doubt, ample to establish the fact that

there was a deficit in the accounts of the defendant to the amount stated by the witness. But did his testimony establish any more than that there was such a deficit?

It was not shown by the State that the tax receipts which were personally signed by the defendant were for amounts which totalled more than the amounts accounted for by him. To have convicted the defendant of embezzlement it was necessary to have shown that he did not account for the monies which "he received," and "that came into his possession as Tax Collector." Manifestly, a conviction would not be warranted by merely showing the amount charged against him on the tax roll for any year and deducting therefrom the insolvency list and the amounts paid in or accounted for, thereby showing a balance due. The balance, if any, shown to be due may be the amount embezzled or it may not, accordingly, as he actually received the money represented by the amount charged on the roll less the insolvencies and sums for which he had accounted. Therefore, in such case, it is necessary as was done by the State Auditor to charge the amounts which the tax receipts showed had been collected, and to the amount thus shown add the amounts realized from tax sales and from that total deduct the sums account for and paid. Now the *duplicates* of tax receipts issued by the *defendant* as Tax Collectors were admissible in evidence to show the amount received by him. Such is the language used in the Branch case. But in stating the account Mr. McIntosh used *all* the duplicates or copies of tax receipts which purported to have been issued from the office. In this there was an assumption of fact that they were *all* issued by the defendant. As State Auditor, Mr. McIntosh could do nothing else, because he was endeavoring to ascertain if there was

a deficit, whether the defendant as Tax Collector owed a balance upon the two tax rolls. This, he unquestionably showed; but when the State undertakes to prove that the defendant embezzled the sum of money represented by that balance, the evidence used by the State Auditor in the statement of the account is not sufficient. It must be shown that the duplicate tax receipts, or copies were duplicates or copies of receipts issued by the defendant. In the case at bar it is asserted as heretofore stated, that the "carbon" receipts—by which was meant the duplicates or copies of tax receipts—show that the defendant's name was signed by other persons. It was stated orally that on hundreds of such receipts the name of the defendant appears on the face of the receipt to have been signed by some one other than him. This statement of fact was not denied by the representatives from the Attorney General's office, nor could he well deny it, because an examination of the exhibits sent to this court show it to be true. It was necessary, therefore, for the State to prove that the money for which such receipts so signed and issued by persons other than the defendant, was delivered to the defendant or put into his custody before he could be convicted of the embezzlement of such money.

Witnesses were called in behalf of the State to prove the signature of the defendant appended to documents containing a statement of remittances to State and county officials of taxes collected, but none to prove his signature to documents showing receipts of money on account of taxes.

There was a "Tax day-book" record in which the receipts for taxes paid were entered. The entries in this book correspond with the duplicate tax receipts in the office. But no one undertook to state who made the en-

tries in that book, that they were made by the defendant,
or that he knew they were accurate.   Mr. Rast directed
Mr. McIntosh to the "books containing tax receipts"
when the latter came to check up the office, but Mr. Mc-
Intosh could not state whether the "entries in the book
were made in the office," nor whether they were made
by the defendant or in his handwriting, nor whether he
had "anything to do with the making of the entries in
the book," nor whether they were made in the course of
business in the office, nor by whom the book had been
kept since the entries were made.   It is true that he testi-
fied to amounts which the "Tax Collector of Duval Coun-
ty" collected upon the 1916 and 1917 tax rolls—in answer
to a question in that form—but that testimony is shown
by Mr. McIntosh to have been based upon the "duplicate
tax receipts" as stated, he merely spoke from the record.
When the defendant was confronted by Mr. McIntosh
with the account of the "shortage" he seemed not to be
surprised, and replied that he "hadn't thought it was
that much."   He said that he supposed that all he could
do was to go to the sheriff and tell him "to lock me up."
But we cannot regard this as a confession of guilt. There
was no evidence that the money collected as shown by
the duplicate tax receipts issued by others than the
defendant was paid over to him, nor that he failed to
pay over to the authorities the money which he deposited
in the banks.

The evidence in this case may have been sufficient to
sustain a verdict in a civil action against the defendant
to recover the amount of the deficit, but it was insufficient
to sustain a conviction of embezzlement.   While the de-
fendant admitted that his books showed that he was
"short" in his accounts with the State and county, there

was no confession directly or indirectly that the shortage so shown by his books represented monies that had come into his possession and which he had converted to his own use. The record shows affirmatively that a small part of the "shortage," several thousand dollars, was accounted for by unpaid checks given by taxpayers in payment of their taxes. In a civil action he would doubtless be liable for that amount, but it certainly cannot be said that he embezzled the money represented by such checks. There is no evidence that the accused used the money shown by the deficit, or any part of it, or permitted any one else to use it for any other purpose than that for which it is alleged it came to him. So we think that the evidence in this case failed to show that the money or any part of it, represented by the deficit found by the State Auditor to exist, actually came into the defendant's possession or control, or that he converted any portion of it to his own use. See 9 R. C. L. 1286.

No criminal intention or lack of good faith on the defendant's part is shown further than may be shown by a "deficit" in his accounts, there were no false entries made by him in his books, he rendered no false accounts, he practiced no form of deceit, nor ran away with any money, nor was it shown that he spent large sums of money for his own use. No acts of this character were shown to establish an intent to embezzle. There was no evidence of any failure, neglect, omission or refusal for thirty days, or for any time, on the part of the defendant shown by the evidence to pay over to the State officials any money "collected" or *"received"* by him,

therefore there existed no prima facie evidence under the statute of the conversion of any funds to his own use. See People v. Blackman, 127 Cal. 248, 39 Pac. Rep. 702; State v. Carmean, 126 Iowa 291, 102 N. W. Rep. 97. As in the case last cited where the court said in substance that one cannot be held criminally liable for acts performed through agents or other officers merely because the accused had supervision over the conduct of the business of the corporation, so we hold that a Tax Collector is not criminally liable for embezzling funds merely because such funds shown by the records in the office to have been received at the office have not been accounted for, where other persons than the accused received the monies and made the entries.

There were many other assignments of error, among which are those which question the propriety of the court's ruling in compelling the accused in open court to obey a subpoena *duces tecum* requiring the defendant to produce receipts acknowledging the payment by him to county and State officials of monies collected at his office as Tax Collector on the tax rolls of 1916 and 1917. It is unnecessary to discuss these assignments because the court's action seems to have been harmless, even if it was error, which is doubtful. There seems to have been no dispute as to the money paid by the accused; the interest in the case centered around the question as to the money received by him. Besides receipts for money paid by him as Tax Collector may be considered as records of his office which are open to inspection and should be in possession of his successor. It would also be useless to discuss the remaining assignments of error

as the judgment must be reversed for the failure of the evidence to support the verdict.

Judgment reversed.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND WEST, J. J.. concur.