W. E. MARTIN, *Petitioner*, vs. FRANK KAREL, as Sheriff of Orange County, Florida, *Respondent*.

143 So. 317.

Division A.

Opinion filed August 3, 1932.

364

*Maguire & Voorhis* and *Akerman & Gray*, for Petitioner;

*Cary D. Landis*, Attorney General, *O. Raymond Ellars*, County Solicitor, and *H. B. S. Hammond*, for Respondent.

ELLIS, J.—On January 8, 1932, the County Solicitor for Orange County, Florida, caused to be filed in the Criminal Court of Record for that County three informations against W. E. Martin, who occupied the office of Tax Collector of that County and who had held such office continuously since January 1, 1928, charging him with embezzlement of County funds in the sum of thirty-seven thousand five hundred and seventy-eight dollars and ninety-four cents.

The first information charged embezzlement during the year 1928 of seventeen thousand six hundred and forty-four dollars and eleven cents. The second charged embezzlement during the year 1929 of twelve thousand nine hundred and eighty-eight dollars and fifty-eight cents and the third charged embezzlement during the year 1930 of six thousand nine hundred and forty-six dollars and twenty-five cents.

Following more accurately the language of each information, the embezzlement of the money received in 1928 was definitely alleged to have been committed on January 1, 1929; the money received in the year 1929 was alleged to have been embezzled on January 1, 1930, and that received in 1930 to have been embezzled on January 1, 1931.

The word embezzlement is not used in either one of the three informations, but it is alleged that Martin, who was Tax Collector for Orange County, was required by the duties of his office to receive into his possession certain monies the property of Orange County; that he did actually receive into his possession as Tax Collector during the years 1928, 1929 and 1930 certain sums of money the prop-

erty of the County of Orange and which he unlawfully and feloniously converted to his own use. Each information in the first count supplemented the charge of embezzlement with the following words: "instead of depositing the said sum of monies into the Excess Fee Fund created by the Board of County Commissioners of Orange County."

Each information contained two counts. The second count in each charged that the accused "unlawfully and feloniously" withheld from Orange County and from the Excess Fee Fund created by the Board of County Commissioners of Orange County, Florida, the sums of money received by him "with intent to convert (the same) to his own use."

The informations clearly charged in each count the offense of embezzlement as defined by Section 7253 C. G. L. 1927; Rast v. State, 79 Fla. 772, 84 South. Rep. 683.

The allegations that Martin "unlawfully and feloniously" converted the money to his own use or withheld it from the proper persons or officers was superfluous. The gist of the offense denounced by Section 7253, *supra*, as clearly shown by Mr. Justice Strum in Crosby v. State, 90 Fla. 381, 106 South. Rep. 741, "is the receipt by the officer, in his official capacity, of money or other property belonging to another, and the withholding or conversion thereof, to his own use, or the secreting thereof with intent to so convert the same." Likewise superfluous were the words appended to each charge as follows: "instead of depositing the said sum of monies into the Excess Fee Fund created by the Board of County Commissioners of Orange County," etc.

The charge was clear, definite, unambiguous, certain to a very high degree in the first count that Martin, the accused, as Tax Collector, received into his possession, as part of his duties, certain public money belonging to the County which he converted to his own use and in the second count withheld with the intent to convert to his own

use. The gist of the offense with which he was charged does not consist in Martin's failure to pay the money into the Excess Fee Fund. If he had deposited the money in a bank to the credit of the County to whom it belonged, or delivered it to the Clerk to be paid to the County Commissioners, or had proceeded in any way however artless, simple, naive but irregular, to pay over the money to the county it could not be maintained that such conduct would not have disproved an intention to convert the money to his own use or a withholding for such purpose.

So the words to which reference has been made which were attached to or hung upon each count were unnecessary, explained nothing and therefore useless. They neither altered nor complicated the charge of embezzlement nor interfered with a clear presentation of the defense nor in anywise affected the defendant's constitutional right to be informed of the nature and cause of the accusation against him.

The three informations covering the period of three years of alleged embezzlement by the accused contain allegations to the effect that during those three years the office of Tax Collector for Orange County cost the people of this State and of Orange County fifty-two thousand two hundred and eight dollars and eighty-eight cents for clerical help and "office expenses;" twenty-two thousand five hundred dollars for services of the Tax Collector allowed by law, plus thirty-seven thousand five hundred and seventy-eight dollars and ninety-four cents funds embezzled, making a total of one hundred and twelve thousand two hundred and eighty-seven dollars and eighty-two cents.

The accused was acquitted upon the first information. There was a mistrial on the second and the third has not been tried.

A writ of habeas corpus was ordered to be issued by a justice of this court returnable before the Supreme Court

upon petition of the accused. The petition alleged that the accused was detained and deprived of his liberty by the sheriff of Orange County on two charges of embezzlement as contained in the second and third informations.

The petitioner contends as set forth in his petition that the whole controversy arose from a "dispute regarding the amounts claimed to be due and owing by (him) your petitioner to Orange County, Florida, for and by reason of certain alleged excess fees for the years 1929 and 1930, pursuant to Chapter 11954, Acts of 1927, and has no reference whatever to any tax monies or other monies of any kind and nature whatever belonging to or in possession of Orange County, and relates solely to said alleged balances for excess fees aforesaid."

The petitioner also contends that there is no law of this State under which he can be lawfully held or prosecuted on any charge of embezzlement for failure to comply with the terms of Chapter 11954 Laws of 1927 and there is no "criminal penalty of any kind provided for any violation or non compliance with said" act; that he has accounted for and paid over, as required by law, all taxes collected by him. The petition also contains allegations from which the facts above recited were taken. It was alleged that a bill of particulars was attached to each of the two informations which would show that the prosecution in each case rests upon the failure of the accused to pay over to the County a large sum of money which he had received from the State and County in excess of the amount to which he was legally entitled for salaries of clerks and expenses of the office and fees allowable under the law to him as compensation for his services as Tax Collector.

It may not be amiss to give at this point a succinct or condensed statement of the bill of particulars which was filed with the second information. The one attached to the third information is similar, varying only in amounts.

"RECEIPTS:

Commissions from State Comptroller and State Treasurer for collection of State Taxes and State Land Sales............. $ 7,367.31

Commissions from Orange County for the collection of County Taxes ..................... 18,441.85

Commissions from the Board of Public Instruction for the collection of school Taxes........ 6,675.91

Commissions for collection Taft Drainage District Taxes....... 80.84

Commissions on sale of Individual Tax Certificates............. 6,047.80

Fees for issuing Tax Sale Certificates ..................... 234.60

Commissions from the Clerk Circuit Court on purchase and redemption of Tax Certificates.. 750.37

TOTAL RECEIPTS........ $39,598.68

EXPENDITURES:

Salaries ..................... $15,474.00

Other expenses................. 2,011.14

TOTAL EXPENSES....... $17,485.14

Receipts less Expenditures............... $22,113.54

Allowance to Tax Collector by Statute...... 7,500.00

Excess Fees Collected................... $14,613.54

Excess Fees reported and delivered to Orange County................................ 1,624.96

Balance due Orange County alleged to have been Embezzled...................... $12,988.58"

The above covers the petitioner's handling of public moneys for the year 1929.

The petition argues from the above and similar bills of particulars that the petitioner is proceeded against for a "criminal offense supposed to have arisen because of an alleged violation of said Chapter 11954, Acts of 1927, Laws

of Florida, and because of an alleged failure to pay into the special fund provided thereby all of the monies in excess of the sum to which petitioner is alleged to be entitled thereunder.''

It is contended that the supposed offense cannot possibly constitute a crime, therefore the Criminal Court of Record is without jurisdiction to try the accused. The reason given for the above postulate is that Chapter 11954, *supra,* prescribes its own method of enforcement and in such manner as to preclude enforcement by a criminal prosecution; that the statute prescribes no criminal penalty for its violation and a criminal offense cannot be created by inference; that the statute relating to embezzlement by public officials, Section 7253, C. G. L. *supra,* does not apply to a violation of the Chapter 11954, *supra;* that the amount with which the Tax Collector is chargeable upon his accounting under Chapter 11954, *supra,* is not '' 'money, property or effects belonging to or in the possession of' the county'' within the meaning of Section 7253 C. G. L., *supra;* that Chapter 11954, *supra,* furnishes no sufficiently definite standard of guilt for its violation and that a conviction of petitioner for embezzlement because of a violation of Chapter 11954, *supra,* would deprive him of his liberty without due process of law contrary to the Fourteenth Amendment of the Constitution of the United States and contrary to Section 12 of the Declaration of Rights of the Florida Constitution.

The petition alleges that all the above arguments were presented to the Judge of the Criminal Court of Record on motions to quash the informations but the Judge denied the motions. Other matters of fact are set forth in the petition to which reference has already been made and other matters set out which in nowise affect the question of the legality of the petitioner's detention.

The return of the Sheriff to the writ of habeas corpus is most unusual in that it is not averred that the Sheriff de-

tains the petitioner in his custody under and by virtue of any warrant or capias issuing from a court of competent jurisdiction, but the return consists of a recitation of facts argumentative in character in accord with the allegations of the petition. In other words, the Sheriff undertakes to set forth in his return the evidence by which the State will seek to maintain the charge of embezzlement and to point out the weaknesses and insufficiencies of such evidence by showing that the money which the petitioner is charged with converting to his own use, was not money collected by the Tax Collector on account of taxes, but it was money which came into his possession on warrants or vouchers or checks or in specie or currency paid over to him by the State and County on audits duly made and allowed as and for the commissions (earned by the office of Tax Collector and salaries and expenses of that office) but that such sums so received were in excess by many thousands of dollars of the amount to which the petitioner was entitled. Therefore although he may owe the excess to the County as one person may owe a debt to another he is in no sense a trustee of the money which cannot be said to be money belonging to the County in his possession.

There was a demurrer to the return It seems to have been attached to and filed at the same time that the return was filed. The same points are presented by the demurrer but a little more amplified, as were presented by the petition. No exception was taken to the return that it did not set forth by what authority the Sheriff detained the petitioner. It does not lie within the mouth of the Sheriff, nor any one as for that matter, to state the nature and character of evidence which a court of competent jurisdiction will receive in support of a valid charge against one accused of crime. The informations definitely charged the offense of embezzlement against Martin the petitioner and if he is in the Sheriff's custody it is because of a warrant

in his possession under authority of which he detains the petitioner. The Sheriff is not concerned as such with the contents of the information nor the evidence by which it is to be supported.

However disinterested his information may be or interesting as a special plea in the petitioner's behalf, it cannot be accepted as a customary or appropriate response to an order to produce the body of the petitioner together with the cause of his detention. We will assume therefore, in view of the allegations of the petition and the points sought to be presented, that the "charges of embezzlement" on which the Sheriff is alleged in the petition to be holding Martin and depriving him of his liberty, refer to warrants duly issued by a court of competent jurisdiction but that the warrants were based upon the information duly filed in the Criminal Court of Record to each of which a bill of particulars is attached of the nature and character hereinbefore set forth and referred to in the return.

In prosecutions for embezzlement a bill of particulars may be required of the State to supplement the allegations of the indictment when it is wanting in details of which the defendant is justly entitled to be informed. See Thalheim v. State, 38 Fla. 169, 20 South. Rep. 938; Eatman v. State, 48 Fla. 21, 37 South. Rep. 576; Mathis v. State, 45 Fla. 46, 34 South. Rep. 287; Enson v. State, 58 Fla. 37, 50 South. Rep. 948; Thomas v. State, 74 Fla. 200, 76 South. Rep. 780; Rast v. State, 79 Fla. 772, 84 South. Rep. 683.

A bill of particulars in the case at bar was not necessary in the light of what this court has often said concerning the right of the accused to apply for one and the discretion of the court to grant or deny the application. The period of time during which the alleged embezzlement occurred was short, the records of the office were at all times in possession of the accused. An inspection of them at any time would have enabled him without any difficulty whatsoever

or the slightest embarrassment to him, to ascertain what monies he had received and what sums disbursed and to whom. The records were made by him or under his direction and supervision and there could have been, in consequence, no surprise to him by any evidence of money which came into his hands as Tax Collector for which he had not accounted.

However the bill of particulars was allowed and the question is how far and to what extent does it affect the evidence which may be introduced by the State in support of the charge of embezzlement. If it is found that the evidence must be confined within the scope of the bill of particulars and no other evidence is permissible, whether such evidence constitutes any crime under the laws of this State punishable as embezzlement is the question.

A "bill of particulars affects the proof and mode of trial only, and not the indictment. It is no part of the record. It is not open to demurrer. It is not a matter of technical nicety, and it is to give notice and guard against surprise on the trial, under the regulation of the court." This language appears in the case of Commonwealth v. Davis, 11 Pick. 432, and was quoted approvingly by this Court speaking through Mr. Justice Shackelford in Mathis v. State, *supra.*

A bill of particulars constitutes no part of an indictment and its defects do not affect the indictment. It is no part of the pleadings but may narrow the indictment as to time of the acts alleged. Reference cannot be had to the bill of particulars to point out any defects in the indictment. See Middleton v. State, 74 Fla. 234, 76 South. Rep. 785; Ex parte Clarkson, 72 Fla. 220, 72 South. Rep. 675; Branch v. State, 76 Fla. 558, 80 South. Rep. 482.

It is clear therefore that no attack may be made upon the information in this case because of any deficiencies in the bill of particulars.

In the Middleton case, *supra,* this Court did say, speaking through the writer, that a "defect appearing in the bill of particulars is in effect a defect in the proof," citing Commonwealth v. Bartleson, 85 Pa. St. 482, and it has been held that a party will not be allowed to contradict his own bill of particulars in any material respect. 2 Ency. of Ev. 421.

Basing his contention that he should be released upon the proposition that the State may not contradict in any material respect the items in the bill of particulars, the petitioner asserts in substance that according to the bill of particulars the money which came into his possession was on account of fees earned by him as Tax Collector and paid over to him by the State or some County agency and does not constitute a trust fund in his possession, the excess of which above the amount allowed to him as fees by the statute and for salaries and expenses of his office is a fund belonging to the County of which fund he is trustee but he becomes merely a debtor of the County for such excess which debt the County may proceed to collect by appropriate civil actions. That therefore the facts shown by the bill of particulars which cannot be contradicted in the trial of the information constitute no criminal offense known to the laws of this State.

Assuming that the bill of particulars is susceptible to the construction placed upon the items under the caption of "Receipts" that counsel for the petitioner place upon them, namely; that the sums listed were received by the petitioner from the Comptroller and State Treasurer and County Commissioners as commissions earned and audited and allowed by State and County authority, the conclusion is not warranted that such sums were not the property of the County, nor that they were paid over to him as commissions and fees earned by him. Whatever amount he may have been entitled to receive under the law out of the

funds so paid over to him, whether by the State, County or private individuals in their transactions with the State and County through the office of Tax Collector, the excess remaining in his hands was County property which it was his duty to pay over to the proper authorities as the law directs. The contention that because he may have had an interest in a part of the funds for his compensation and the expenses of the office which he occupied bereft the County of all title in or ownership of the residue is unfounded in reason and unjustified in law.

The fees and commissions were not earned by the Tax Collector but by the office through him as its occupant. The fact that through an inexpert and inefficient method of accounting and transaction of the State's public business a larger sum was delivered to him by State and County officials out of which he should receive his compensation and office expenses than was necessary for that purpose did not vest him with title to any part of the excess above the compensation and office expenses which the law permitted him to take. It requires no very cogent reasoning to demonstrate a truth so apparent. Assuming that the money was delivered to him as he contends, it was none the less money belonging to the County which it was the duty of the petitioner as Tax Collector as such to receive for purposes to which the law appropriated it and when he paid to himself the amount to which he was lawfully entitled no rule of law authorized or justified his retention of the excess and the appropriation of it to his own use. Money or other property belonging to the State or any of its agencies which comes in due course of law into the hands of an officer of the State or County whose duty it is under the law to receive it cannot by any metamorphosis worked by legal or political sophistry be changed into private ownership.

In the Middleton case, *supra,* it was held that money

collected for a hunting license by a County Judge whose duty required him to receive it was property of the County although he was permitted to deduct therefrom his fees and those of the game warden and the balance left in his hands belonging to the County although the Statute directed it to be paid into the treasury to the credit of the County School Fund and that a charge of embezzlement would lie against the official for an appropriation of the balance to his own use.

Chapter 11954, *supra*, did not vest in County officials, whose compensation for official duties were paid wholly or partly by fees or commissions, the title or ownership of all fees or commissions collected through the particular office occupied by the particular official.

The Constitution requires the Legislature to fix by law the duties and compensation of County officials. Art. III, Sec. 27.

The compensation of the Tax Collector was fixed by Chapter 11954, supra. The fees collected by that officer represent the charge which the State makes for the service rendered to the people through that officer. See State ex rel. Buford v. Spencer, 81 Fla. 211, 87 South. Rep. 634. While in that case the particular act under consideration, Chapter 7334 Acts of 1917, was declared by a three to two decision to be unconstitutional on the ground that the power which the legislature attempted to vest in the County Commissioners to fix the number and compensation of deputies clerks and assistants of county officials rendered it possible for the County Commissioners indirectly to fix the compensation of the County officials and thus nullify the Constitutional provision above mentioned requiring the Legislature to fix such compensation, the principle was nevertheless announced that the fees prescribed by law represent the charge made by the State for services rendered by it through certain designated

officers and that the State may give all the fees to the officer as his compensation or it may give him a portion only and retain the remainder to be applied to such purposes as the Legislature may determine. That it was of no material importance that the particular act made no provision for the disposition of the residue because the Legislature may do that at any time and when it makes such disposition of the surplus the officials will be required to account for it. The principle is definitely and conclusively announced that such fees are the property of the State, the surplus of which it may dispose of as may be lawful.

Chapter 11954, *supra*, carries out that idea and purpose clearly. The history of the legislation which culminated in the enactment of Chapter 11954, *supra*, is given fully in an able opinion by Mr. Chief Justice Terrell in Flood v. State, 100 Fla. 70, 129 South. Rep. 861. The constitutionality of the act was upheld. The learned Chief Justice declaring the principle which is applicable here: "that while one's right to office is a substantive right that may be enforced in appropriate proceedings, yet a public officer has no *estate* in his office, that the unearned fees or commissions accruing to him therefrom are not property, and that therefore requiring them to be paid into the treasury and a salary paid in lieu thereof is not taking private property for public use without compensation. 23 Am. & Eng. Encyc. of Law, 397. It is also well settled in this state that fees collected by officers represent the charge which the state makes for services rendered by it through its officers, and constitutes a fund subject to the control of the State to be applied as the Legislature directs. State ex rel. Buford v. Spencer, *supra*."

In the case of Sparkman v. County Budget Commission, 103 Fla. 242, 137 South. Rep. 809, this Court, in a well reasoned opinion by Mr. Justice Whitfield, said: "Amounts received by the officer for services rendered by virtue of the

office in excess of the sum the officer is allowed from the 'net income' of the office as his 'yearly compensation,' *are held in trust by the officer* to *be accounted for* and *paid over* by the *officer as required by the statute.''* (Italics mine).

The logic of that conclusion is inescapable. If fees collected through an office do not constitute property of the officer but constitute property belonging to the State from which the officer may take only such compensation for his services as the law permits, the excess being a trust fund in his hands, and the conversion of trust funds by the trustee to his own use is a crime, it follows that the withholding by the Tax Collector of any part of the funds intrusted to him by the State with intent to convert the same to his use or the actual conversion of the same to his use is a violation of law as denounced by the embezzlement Statute.

It is urged in the brief of Counsel for the Petitioner that the money which the accused is alleged to have converted to his own use, or withheld with that intent, is money which the petitioner received from the State Comptroller, County Commissioners and the Board of Public Instruction as his Commissions for making collection of Taxes. That interpretation of the bill of particulars is not accurate as it fails to account for such items as ''Commissions on sale of individual Tax Certificates; Fees for issuing Tax Sale Certificates and Commissions from the Clerk Circuit Court on purchase and redemption of Tax Certificates,'' all of which are fees or commissions received through the office of Tax Collector, which in one case amounted to more than seven thousand dollars and in another more than nine thousand nine hundred dollars. In the case of the first information for embezzlement of funds during the year 1928 those items amounted to more than nine thousand five hundred dollars and in each case less than the amount by nearly fifty per cent. of the sum alleged to have been stolen or embezzled.

In any event the money received from the State or County or individuals or the Clerk of the Court as fees belonging to the State charged by it and collected through the office of Tax Collector and paid over to the Tax Collector at different times from which he was to deduct the necessary expenses of his office and the compensation allowed to him by statute for his services and the excess of which he was required to pay over to the County as the law directs.

What merit is there in the contention that because he first paid over to the State or County all monies received by him including fees and commissions, and the State and County afterwards, or at stated periods during the year, sent money of the State to him from which to take the amount of the necessary expenses of his office and his own compensation, that he owns the excess, or has any right to its use or that as to such excess he is merely a debtor for which he is liable to account in a civil action only?

He is liable in a civil action surely, but the fact remains that it was his duty as Tax Collector to receive from the State of County money sent to him with which to pay himself. The excess is none the less County property under the provisions of the act. The fact that the Tax Collector did not follow the course apparently permissible under the provisions of the third Section of the Act and deduct the fees and commissions collected by the office and make his sworn statement thereof to the County Commissioners and Comptroller, puts him in no position to say that because he received from such sources more money than he was entitled to receive that he may withhold such excess with intent to convert it to his own use, or that the excess is not the property or public money of the County in his possession which is subject to be taken by him in violation of the Statute.

The case of United States v. Mason, 218 U. S. 517, 31

Sup. Ct. Rep. 28, 54 L. Ed. 1133, so earnestly relied upon by counsel for petitioner in support of the proposition that fees and commissions received through the office of Tax Collector are not public monies belonging to the State is not authority in this case for, as pointed out, the Supreme Court of this State has definitely held that such fees and commissions are the charge which the State makes for the service rendered through that office which the State may dispose of as it deems proper. The State by legislative enactment disposes of such monies by directing that the officer retain so much for his compensation and expenses of his office and pay over the excess to the County and this Court has held that such excess is a trust fund in the hands of the officer whose duty it is to pay over to the proper authorities as the statute directs.

It is therefore the order of the Court that the demurrer to the return of the Sheriff to the writ of habeas corpus be and the same is overruled and the petitioner is hereby remanded to the custody of the sheriff.

BUFORD, C.J., AND BROWN, J., concur.

WHITFIELD, P.J., AND TERRELL, J., concur in the opinion and judgment.

DAVIS, J., disqualified.