SPECTOR, Judge.
The appellant seeks reversal of a judgment and sentence entered pursuant to a jury verdict of guilty on charges of embezzlement of public funds. The indictment which was presented in January, 1967, charged that appellant embezzled $7,971.51 which came into her possession by virtue of her employment at the college between February 17, 1965, and May 20, 1966.
Appellant was employed for about eight years by the Board of Public Instruction of Putnam County, Florida. Her duty in such employment was as a bookkeeper in the business office of St. Johns River Junior College, an institution operated by the said Board of Public Instruction. By operation *419 of law, said junior college is a part of the Putnam County School System. Section 230.0102(1), Florida Statutes, F.S.A. Appellant’s physical place of employment was in the business office of the college. Her duties primarily related to the keeping of internal accounts of the school. She handled the posting of records and the draw- ' ing of checks to be signed by two other persons so authorized. Appellant prepared bank deposit slips and handled the money to be deposited. Apparently most of the deposits were actually made by her at the bank although these were sometimes made by other persons.
The testimony reflects that at least six persons, including the appellant, took in and gave receipts for money paid to the school by students. Among such other persons were students who were on part-time employment as well as full-time clerks. The funds were paid to the business office for student transcript fees, registration and tuition fees. Additionally, funds taken in at the college book store and cafeteria were turned in to the business office so that they could be run through the internal accounts and then deposited in the bank to the college’s account.
Appellant’s employment at the college was terminated in August, 1966. At that time she was asked to appear at the office of the Superintendent of Public Instruction. On her arrival there she found present an array of high echelon school personnel, including the superintendent, the director of business affairs at the college, the president of the college, and a county auditor. She was then and there informed that some altered receipts had been discovered and that $1,791.51 could not be accounted for in the college’s bank account. Appellant stated that she had no knowledge of the shortage, but on the promise that her bonding company not be notified she paid that sum to the county. Her trial explanation as to why she paid this money was that she felt responsible in a supervisory sense for the shortage since it developed in the department over which she exercised authority and control subj ect only to the business manager. Apparently she was advised by her superiors that if she paid this sum the matter would be laid to rest and no public disclosure or prosecution would be made so that she would be free to seek and get other employment.
About a month after appellant finished paying the $1,791.51 to the college, she received a call from an investigator in the sheriff’s office requesting her to meet the said investigator in the office of the assistant state attorney. Appellant, thinking that she could avoid compulsory process by appearing voluntarily, met the two as arranged. She was interrogated about the missing money at that meeting and was told that they knew she paid the money back and that such payment same as made her guilty of the crime. Appellant was interrogated for several hours about the matter and was assured she could rely on them and that she would be better off if she talked and gave a statement. During this time she had not been formally arrested, although she contends she did not feel free to leave and that, in fact, she felt as if she were under arrest.
Several days later, on November 28, 1966, appellant called the investigator and said she wanted to talk some more about the matter and when she appeared at the jail, the assistant state attorney was also present. This meeting was precipitated by appellant’s own fears and desire to get the matter off her mind which was apparently generated by her guilt feelings. In any event, on this occasion the appellant, after having been advised of her rights under the Miranda decision, signed a written waiver of rights and in her own words and handwriting signed a statement, which was admitted into evidence over her objection, reading in material part as follows:
“On approximately November 19, 1965, I altered some receipts in the internal accounts of the St. Johns River Junior College, taking and spending these funds for my own purpose and for the purpose of balancing. I believe this started around *420 November, 1965, and through January 1966. I do not know the exact amount taken in total. I have read this statement consisting of one page and the facts contained therein are true and correct.”
The first point raised by appellant for reversal is her contention that the evidence was insufficient to support the verdict in the following respects: (a) the appellant is not within that class of persons comprehended by Section 812.10, Florida Statutes, F.S.A.; (b) the State failed to show whether cash or checks were embezzled and whether such were converted to her own use; (c) the State failed to prove a prima facie case, thereby entitling her to a directed verdict.
We must reject appellant’s contention that the public officer’s embezzlement statute, Section 812.10, is inapplicable to her. The last subsection thereof provides that it is applicable as well “to any deputy, clerk or employee in any state, county or municipal office, and to all school officers.” The evidence in this case clearly shows that appellant was a state employee.[1] She worked for the county school board in a junior college operated by it. One need not be an elected or appointed officer to come within the statute. Its requirements are satisfied if the accused is employed by such officers in the performance of their public functions. Nor does it matter that the accused employee works directly in the central office of the employing agency or in an office maintained by that agency or officer. Crane v. State, 76 Fla. 236, 79 So. 806; Rast v. State, 79 Fla. 772, 84 So. 683. Further urging the inapplicability of Section 812.10, Florida Statutes, F.S.A., to the facts of the case at bar, appellant contends that there was no proof of a statutory duty imposed upon her to collect and receive the funds she converted to her use. This contention was long ago rejected by the Supreme Court in Kirkland v. State, 86 Fla. 64, 97 So. 502 (1923). There it was held that if the person charged lawfully becomes custodian of public money or property, he may be said to have received it by virtue of his office, which is the equivalent of saying that the duty of his office required him to receive the money or property.
The sufficiency of the evidence is also questioned by appellant’s contention that no showing of conversion was made nor that there was proof the property taken was in cash or checks. We think this contention is amply refuted by appellant’s own written statement by which she admitted she took funds and spent them for her own purpose. The indictment charges that appellant took “dollars, currency of the United States of America” as was the case in Craig v. State, 95 Fla. 374, 116 So. 272 (Fla.1928). In Craig the court held that evidence of embezzled dollars was the equivalent of evidence of embezzled currency of the United States. The court there simply took judicial notice that currency of this country is expressed in dollars. In the instant case, appellant raises the point because the witnesses could not tell whether the missing funds were in cash or checks. We do not consider this to be a fatal defect because the appellant supplied the missing description, if any, of the property taken by referring to it in her statement as being “funds” which she took and spent. The word “funds” is defined as including money in hand and pecuniary resources. Random House Dictionary of the English Language, Unabridged Edition. We think the proofs submitted to the jury were sufficient to make a prima facie case of embezzlement under Section 812.10, Florida Statutes, F.S.A., particularly as such proof was enhanced by appellant’s own written admissions.
Appellant next contends that it was error to admit her private bank account ledgers into evidence. Such evidence *421 shows that during the period over which the embezzlement occurred appellant deposited large sums of cash to her account. Some $30,000 was thus shown to find its way into appellant’s account. Her explanation was that such funds were kept on hand by her in her home and were derived from past circumstances. The evidence of the sudden increase in appellant’s financial circumstances when taken together with the other evidence given was competent to support a deduction by the jury that she was guilty of the embezzlement charged to her.' Astrachan v. State, 158 Fla. 457, 28 So.2d 874 (1947).
Appellant also assigns as error the trial judge’s denial of her motion for new trial. That motion was premised primarily on the discovery of allegedly new evidence by the defense. During the trial the State introduced evidence of an audit of the college’s books and records which revealed that the appellant had personally signed receipts for money in the amount of $7,-971.51. Eight separate receipt books used at the business office of the college and containing copies of receipts issued over appellant’s name were introduced in evidence. At the time such exhibits were admitted, the auditor testifying for the prosecution stated that the moneys represented by such duplicate receipts were not traceable to the college’s bank account, and that it was on the basis of such inability to trace the funds into a deposit that he concluded that shortages existed. Appellant’s motion for new trial is accompanied by exhibits consisting of what she calls random samplings from the receipt books together with copies of bank deposit slips showing that at least some of the receipted for funds which the auditor stated were not traceable to the college’s bank account were actually deposited to said account. In other words, appellant now contends that she has documentary proof that she did not take the funds as accused. Appellant’s new trial exhibit “A” taken from State’s exhibit “5” shows seven different receipts selected at random from those in said exhibit “5” which were in fact deposited to the credit of the college, thus refuting rather conclusively the auditor’s testimony that none of the money receipted for by appellant in that exhibit “5” were traceable to a bank deposit. Our examination of State’s exhibit “5” reveals that it contains some 65 receipts which appear to be signed by appellant. Seven of these are shown by appellant to actually have been deposited to the college’s account. In addition to those seven items, we have found some twenty-two other receipts issued over appellant’s signature which on comparison with the names and amounts listed on the submitted deposit slips appear to have been credited to the college’s bank account. Thus, we find from this one receipt book alone that out of some 65 items which according to the auditor were not traceable, 27 of them are shown to have been deposited in the bank directly contrary to the State’s evidence. If our judicial arithmetic is correct, the audit forming at least part of the State’s case has a 41 percent error as relates to this receipt book, State’s exhibit “5”.
Appellant’s new trial exhibit “B” lists five items chosen at random from the receipts contained in State’s exhibit “6”. Our examination of that receipt book reveals an additional 14 items which upon comparison of names and amounts with those listed on bank deposit slips appear to have been deposited to the college’s bank account directly contrary to the auditor’s testimony. This receipt book has some 25 receipts issued over appellant’s name, none of the proceeds of which were traceable by the auditor to the bank; yet by the above process of comparing the data on the receipt with that on the deposit slip, it appears that some 19 of the items were actually deposited. This is an error of some 76 percent as it relates to that receipt book.
We have not examined the remaining six receipt books which were also admitted into evidence together with an official auditor’s report stating that none of the moneys receipted for in those books over appellant’s signature were traceable to a bank deposit. *422 The foregoing analysis of only two receipt books makes it quite clear that the evidence submitted to the jury relating to the receipt books and the auditor’s inability to trace the funds collected therein to the college’s bank account lacks that degree of certainty necessary to support a finding that the appellant embezzled the full amount represented by the receipts in question which was identical to the amount charged in the indictment. It obviously was on the basis of the jury’s verdict finding appellant “guilty as charged” that the trial judge, following the mandate of the statute, imposed both a sentence of imprisonment and a fine upon appellant in the amount of $7,-971.51 as charged and as presumptively proved by the evidence consisting of the receipts signed by appellant.
The above discussed receipt books constituted ample evidence of the amount of money coming into appellant’s possession, but by no means did they constitute proof that the money represented by those receipts were converted to appellant’s use. As to these receipted funds, it was incumbent upon the State to show that they had not been deposited in the college’s bank account by either direct testimony from the auditor that he had examined the bank deposit slips as the basis for his conclusion that the funds were untraceable to the bank or by the admission into evidence of duplicate copies of deposit slips. In Branch v. State, 76 Fla. 558, 80 So. 482, at 486, the court discussed the use of receipt books and reports as evidence in embezzlement cases, stating:
“ * * * To show then the embezzlement and conversion by him of certain of the moneys so received, it became necessary to show the amounts reported and paid over from time to time by him to the officer or officers authorized and required under the law to receive such reports and such moneys * *
By analogy then, as to the $7,971.51 represented by the receipt books, there was an ample showing of possession; but since there was no showing by the State that the said amounts were not deposited to the college’s bank account, there was no proof o| conversion of these identifiable amounts. Accordingly, we are of the view that the evidence that the said $7,971.51 was converted to appellant’s use was legally insufficient; and, therefore, the imposition of a fine based on that amount was error as contended by appellant’s new trial motion.
Although we find that the evidence was legally insufficient to support a finding that appellant took said $7,971.51 as charged, such insufficiency does not form the basis for disturbing the verdict and judgment of guilty in this case since it is not essential to prove that an exact amount was embezzled in cases involving public officers and employees under Section 812.10, Florida Statutes, F.S.A. Sims v. State, 54 Fla. 100, 44 So. 737. In the instant case, there was ample evidence, even without considering the amount reflected in the receipt books, that appellant took public funds and converted them to her own use in violation of her public trust. She admitted altering some receipts and taking ‘these’ funds for her own use. She had unusually large amounts of cash which she deposited in her private account without a sufficient explanation for such possession. And finally, when confronted with the altered receipts by her employers, she agreed to and did pay to the county the sum of $1,791.51 on account of such altered receipts.
Accordingly, we hold that the evidence of appellant’s guilt of embezzling some public funds is sufficient and therefore the conviction should stand. However, since the evidence to support the amount of the fine imposed by the trial judge, that is, $7,971.51, was legally insufficient, we remand this case to the trial court with instructions to rescind the fine imposed and, if the State be so advised, to hold a hearing to determine the amount of the fine to be imposed.
Affirmed in part and reversed in part.
JOHNSON, C. J., and WIGGINTON, J., concur.

. See Adams v. Board of Public Instruction of Okaloosa County, Florida, Fla.App., 225 So.2d 428, Opinion filed July 24, 1969, wherein this court held that a county board of public instruction is a state agency.