Taft, J,
Defendant contends that the indictment does not allege nor is the evidence sufficient to establish an offense under .Section 12876, General Code. In support of this contention, he argues that money paid to him pursuant to Section 3004, General Code, could be lawfully commingled with his own funds, that there were no statutory words which required him to keep such money separate and apart from his own funds, and that his only duty with respect to such money was to account for it at the end of the year and pay to the county treasurer as an indebtedness of his whatever amount was due as a balance.
If these arguments are sound, then defendant could not be guilty of embezzling or converting to his own use either what he had a right to use as his own or what he was only obligated to repay as a debt. Obviously, if a person has a right to use certain money as his own, he does not “embezzle” or “convert” it to his own use when he exercises that right. See United *577 States v. Mason, 218 U. S., 517, 54 L. Ed., 1133, 31 S. Ct., 28. Whether these arguments are sound necessarily depends upon how Section 3004, General Code, should be construed.
Before proceeding to consider that problem, it may be observed that the words of Section 12876, General Code, cannot afford any support to this contention of defendant, no matter how strictly those words are construed against the state. Thus, defendant was admittedly “elected * * * to an office of public trust,” the money received by him pursuant to Section 3004, General Code, would be described by the words “anything of value that shall come into his possession by virtue of such office” (he got possession of that money only because he was prosecuting attorney), and, if he uses such money merely to pay his personal obligation, it necessarily follows that he “converts [it] to his own use.” (The statute makes it an offense if he either “embezzles or converts to his own use.”)
Parenthéticallly, it may also be observed that the offense charged is not that defendant made, as he apparently did, a false statement in the verified itemized statement for the year 1953, which was required of him by Section 3004, General Code.
There are no words in Section 3004, General Code, which express a legislative intent that any money paid to the prosecutor thereunder is to be his money, or may be mingled with his money. In our opinion, no words of the statute can support a reasonable inference of such an intent. On the contrary, the words, that the allowance is of an “amount * * * to provide for expenses which may be incurred hv him in the performance of his official duties and in the furtherance of justice,” indicate that the amount is paid to him only “to provide for” those specified uses. Also, the requirements, that he file a verified “itemized statement * * * as to the manner in which [such] fund has been expended ’ ’ and that he ‘ ‘ shall if any part of such fund remains in his hands unexpended * * * pay the same [i. e., “part of such fund”] into the county treasury,” rather clearly indicate that moneys received by him pursuant to this statute are to be part of a “fund,” to be kept separate from his own personal property, just as any other trust res should be, and are to be used only for the purpose specified in the statute. If the prosecutor could mingle money paid to him under this *578 statute with money of his own and use it as if it were his own money, then by expending it he could avoid having any part of such fund remain “in his hands” and so avoid any obligation to “pay * * * into the county treasury” any part of said money not expended for the purpose specified in the statute. In our opinion, such a result would be contrary to the intention expressed by the words used by the General Assembly in the foregoing statute. The duty to account provided for in the statute is not inconsistent with a conclusion that the prosecutor receives money paid under the statute as a trustee. A trustee is always under a duty to account with respect to property or money received by him as trustee. Likewise, the requirement of a bond is not inconsistent with regarding the prosecutor as a trustee of money received under the statute, even though the conditions provided for the bond should be construed as in effect also making the prosecutor an insurer of the proper payment of the amount of such money. The General Assembly may well have desired more protection of this public money than would have been afforded by merely imposing upon the prosecutor the obligations of a trustee with respect thereto and upon his surety an obligation to insure the faithful performance of those obligations.
The cases of United States v. Mason, supra (218 U. S., 517), and United States v. MacMillan, 253 U. S., 193, 64 L. Ed., 855, 40 S. Ct., 453, are relied upon by defendant. In each of those cases it was held that, under the applicable federal statutes, the clerk of a federal court received the fees and emoluments of his office with a right to use them as his own and subject only to a duty to pay over to the United States the surplus thereof which his semiannual return or the audit thereof showed to exist over and above the compensation and allowances which he was authorized to retain therefrom. Hence, in the Mason case, it was held that such a clerk could not embezzle or convert to his own use what he had a right to so use as his own; and in the MacMillan case it was held that such a clerk was entitled to interest received by him from deposits in banks of the amounts of such fees and emoluments. In reaching these conclusions, the United States Supreme Court pointed out that, “prior to 1841 * * * the fees and emoluments received by the clerks were their own prop *579 erty”; that subsequently, “to the extent of the amount of the fixed compensation of the clerk and the necessary expenses of his office, he was entitled to use and to pay as formerly”: that “what, if anything, should be paid into the public treasury at the end of the half year, when he was to make his return, depended upon the amount of the fees, the amount of the expenses and the result of the audit”; and that, “if his fixed compensation and his necessary expenses exhausted the fees, there would be nothing to pay.”
In effect therefore such a clerk collected the fees and emoluments as his own subject to a duty to pay to the United States what would be similar to a tax or charge against the clerk for the privilege of collecting those fees and emoluments as his own, such tax or charge being an amount equal to the surplus, if any, of the amount of such fees and emoluments over the sum of the amount of the necessary expenses of the clerk’s office and the amount of his maximum fixed compensation as specified by statute.
As hereinbefore pointed out, nothing in the words of Section 3004, General Code, can justify a conclusion that the prosecuting attorney is to receive the allowance therein specified as his own or that he may use any part of such allowance except for the purpose specified in that statute. Before it is paid by the county treasurer pursuant to Section 3004, General Code, the money so paid is obviously public money. On the other hand, the money involved had not become public money at any time before the embezzlement charged in the Mason case or at any time before the interest was earned thereon in the MacMillan case. This distinction was well stated in Martin v. Karel, Sheriff, 106 Fla., 363, 143 So., 317, where it is said in the opinion by Ellis, J., on page 374:
‘ ‘ Assuming that the money was delivered to him as he contends, it was nonetheless money belonging to the county which it was the duty of the petitioner * * * to receive for purposes to which the law appropriated it and when he paid to himself the amount to which he was lawfully entitled, no rule of law authorized or justified his retention of the excess and the appropriation of it to his own use. Money or other property belonging to the state or any of its agencies which comes in due *580 course of law into the hands of an officer of the state or county whose duty it is under the law to receive it can not by any metamorphosis worked by legal or political sophistry be changed into private ownership. ’ ’
Also, in Arbuckle v. United States, 146 F. (2d), 657, it is .said in the opinion by Groner, C. J.:
“The Mason case involved fees received by the clerk of a court * * During the period in question these fees were not received by the clerk as moneys of the United States, but * * * as amounts allowed to him as his compensation and office expenses under the statutes defining his rights and duties. And, as the court then said, where a surplus remained payable to the United States, the clerk was as to this surplus not trustee lor the United States, but a debtor of the United States.
“In the instant case * * # while these moneys were not public moneys in the sense in which the ordinary revenues of government are public moneys, they were nevertheless moneys of the United States in the sense of moneys which the United States controlled and which, through an instrumentality of the United States created by Congress, they disbursed.”
In paragraph three of the syllabus of State v. Baxter, 89 Ohio St., 269, 104 N. E., 331, 52 L. R. A. (N. S.), 1019, Ann. Cas. 1916 C, 60, it is said :
“It is the design and policy of that section [Section 12876, General Code] and kindred statutes to prevent public officers and agents from using public funds in their possession or under their control, in any manner or for any purpose not expressly authorized by law. ’ ’
To the same effect see the opinion “by the court” in State v. Cameron, 91 Ohio St., 50, 109 N. E., 584.
Defendant further argues in effect that, if a prosecutor has no right to use money paid to him pursuant to Section 3004, General Code, as his own and subject only to a duty to account and to pay as an indebtedness any portion thereof not used for the purpose specified in that statute, then a prosecutor could be convicted of embezzlement under Section 12873, General Code (now Section 2919.01, Revised Code), for merely drawing down $500 pursuant to Section 3004, General Code, and depositing it in a bank account pending its proper use for the purpose *581 specified in that statute. In support of this argument, defendant points out that the prosecutor is not one of the officers specified in Section 12875, General Code (now Section 2919.02, Revised Code), and refers to the cases of State v. Newton, 26 Ohio St., 265, and State v. Pierson, 83 Ohio St., 241, 93 N. E., 967. We express no opinion as to whether this argument is sound. However, if it is, we fail to see how it would, as defendant apparently contends, support a conclusion that Section 3004, General Code, should he construed as providing merely for a relationship of debtor and creditor between the prosecutor and the county with respect to amounts paid to the prosecutor pursuant to that statute.
In our opinion, any amounts received by the prosecuting attorney as an allowance pursuant to Section 3004, General Code, represent or become part of a fund which the prosecuting attorney may use only for the purpose specified in the statute, i. e., “to provide for expenses which may be incurred by him in the performance of his official duties and in the furtherance of justice, not otherwise provided for.”
It is argued by defendant that such a holding will hamper the operations of a prosecutor by preventing him from advancing to himself and to others amounts needed for expenses to be incurred. However, the statutory words do not prevent such advances. They would appear to contemplate them. Thus, there is nothing to indicate that provision can only be made for expenses already incurred. On the contrary the statutory words are “to provide for expenses which may be incurred.” Although the prosecutor may be unable to secure repayment to the “fund” of advances properly made therefrom by him to someone else to the extent such advances are not used by such recipient for the proper purposes contemplated, it does not follow that such advances will not represent a provision by the prosecutor “for expenses which may be incurred by him in the performance of his official duties and in the furtherance of justice, ’ ’ within the meaning of the statutory words.
Defendant also relies on the decision of this court in State v. Urbaytis, 156 Ohio St., 271, 102 N. E. (2d), 248, as requiring the conclusion that defendant was entitled to a directed verdict of acquittal. In that case, as the Court of Appeals stated in *582 its opinion in the instant case, “proof of the corpus delicti, to wit, the conversion of the money to Urbaytis’ own use, rested entirely on circumstantial evidence” and “this circumstantial evidence did not, in view of the ward’s testimony that Urbaytis settled with her and paid her in full, reach the required high degree of probative force and certainty which would sustain a conviction.”
On the other hand, in the instant case, there is direct evidence that $187 of the $210 of the money received by defendant pursuant to Section 3004, General Code, was used by defendant to discharge a personal obligation of defendant. Defendant apparently conceded that fact and sought to justify or explain such use of the $210 by evidence that he had previously expended that amount by payment to a man named J. Walker, whom defendant’s evidence was otherwise unable to identify and whose later whereabouts were unknown, for the unsuccessful purpose of securing information as to the whereabouts of a girl named Lola Celli who had been missing for several years and still was missing, and that the $210 so used by him was to reimburse him for that expenditure. Defendant’s written statements in the voucher with respect to the special account in which the $500 paid to him purusuant to Section 3004, General Code, had been deposited and later in the accounting required by Section 3004, General Code, that the $210 was expended on a trip to New Orleans, are entirely inconsistent with the foregoing evidence which he offered to justify and explain his apparent use of this $210 to discharge his personal obligation. There is also other circumstantial evidence which is not consistent with that evidence of defendant. Thus, it is quite apparent that the jury could have disbelieved the evidence with respect to any payments to J. Walker and could have found that defendant did use the $210, which he admittedly had falsely stated twice in writing as used for a trip to the NewT Orleans prosecutors’ meeting, merely to pay off his own personal obligation. Cf. State v. Sheppard, 165 Ohio St., 293, 306, 135 N. E. (2d), 340.
Defendant further contends that the Court of Appeals erred in not granting a new trial because of gross misconduct of one of the special prosecuting attorneys.
For the reasons hereinafter stated we do not believe that *583 any useful purpose would be served by describing the claimed misconduct, except by stating that, if it would justify a reversal, it would be described only by the words near the end of Section 13449-5, General Code (now Section 2945.83, Revised Code), which read “any other cause whatsoever.” That kind of cause is not such a cause as may under some of the words of that statute justify a reversal if it “affirmatively appears * # * that the accused * * * may have been prejudiced” by it. Under the words of the statute with respect to that kind of cause, it must affirmatively appear “that the accused ivas prejudiced thereby or was prevented from having a fair trial.” As hereinbefore indicated, the weight, credibility and effect of the evidence in the instant case were not only such as to support a conviction but were also very substantially in favor of the state. Thus, even if we assumed that the claimed misconduct was gross misconduct, we are of the opinion that it does not appear that the accused in the instant case was prejudiced thereby or was prevented thereby from having a fair trial. Cf. State v. Witsel, 144 Ohio St., 190, 58 N. E. (2d), 212.

Judgment affirmed.

Weygandt, C. J., Matthias, Hart, Zimmerman, Stewart and Bell, JJ., concur.